968 P.2d 86 (1998)
BOARD OF TRADE, INC., Appellant,
v.
STATE of Alaska, DEPARTMENT OF LABOR, WAGE AND HOUR ADMINISTRATION, Appellee.
No. S-7952.
Supreme Court of Alaska.
November 27, 1998.
*88 Kevin T. Fitzgerald, Bogle & Gates, P.L.L.C., Anchorage, for Appellant.
Toby N. Steinberger, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.
Before MATTHEWS, C.J., and EASTAUGH, FABE and BRYNER, JJ.

OPINION
FABE, Justice.

I. INTRODUCTION

In this appeal we must decide whether an employer must pay prevailing wages under the Little Davis-Bacon Act[1] to workers employed at a quarry thirteen miles from the site of an airport construction project. The employer challenges the validity of the Department of Labor's regulation that broadly defines the term "on-site" to encompass activities occurring away from the construction site but dedicated exclusively to the construction contract. Although we uphold the validity of the regulation itself, we conclude that the Department erred in interpreting the regulation and remand for further proceedings.

II. FACTS AND PROCEEDINGS

A. Facts

In June 1991 the Alaska Department of Transportation and Public Facilities (DOTPF) issued an invitation for bids for a runway rehabilitation project at the Nome airport. The bid specifications suggested that rock suitable for crushed aggregates for asphalt concrete would be available at Cape Nome Quarry, located thirteen miles from the Nome airport. The specifications further remarked that the State was "unaware of any other material sources in closer proximity meeting project requirements."
In July 1991 DOTPF notified Knik Construction, Inc. (Knik) that it was the lowest bidder on the prime contract for the runway renovation project. At the same time, Board of Trade, Inc. (BOT), a Nome gravel supplier, entered into a contract with the owners of the Cape Nome Quarry for the removal of material from the quarry to supply the job. In August 1991 DOTPF formally awarded Knik the runway renovation contract. Knik and BOT then entered into a formal contract for the supply of aggregate materials from the quarry to the Nome airport project.

B. The Prevailing Wage Issue and the Prior Proceedings

In August 1992 the Department of Labor (Department) informed BOT that under the regulations interpreting the Little Davis-Bacon Act (LDBA),[2] the Cape Nome Quarry was considered "onsite" and employees at the quarry were entitled to compensation at the prevailing wage rate. The Department also instructed DOTPF to withhold $100,000 from Knik for BOT's failure to pay prevailing wages to its quarry employees.[3]
In February 1994 the Department filed a prevailing wage complaint against BOT. The Department concluded that because BOT's activities at the quarry were dedicated virtually exclusively to the performance of the Nome airport contract, they were considered "on-site" under 8 Alaska Administrative Code (AAC) 30.910(a) and the work of BOT's *89 employees was thus compensable at the prevailing wage rate. After an informal hearing, the Department calculated the additional wages owed by BOT to be $118,110.59.
BOT requested a formal hearing and challenged the validity of the regulation defining on-site activity. The hearing officer, Robert Landau, granted the Department's motion for summary judgment, ruling that he did not have authority to address the validity of the Department's regulation. He concluded that BOT was liable for the prevailing wage rate because the quarry work was exclusively dedicated to the airport project and was "on-site" under the Department's regulations. The Director of the Division of Labor Standards and Safety adopted the hearing officer's findings and ordered BOT to pay $118,110.59.
BOT appealed to the superior court. In December 1996 Superior Court Judge Milton M. Souter affirmed the Department's decision in its entirety. BOT appeals.

III. DISCUSSION

A. Standard of Review

We will not defer to the decision of a superior court acting as an intermediate court of appeal.[4] Instead, we "independently review the merits of an administrative determination."[5] Whether the grant of summary judgment was appropriate is a question of law that we review de novo.[6] We "must determine whether there was a genuine issue of material fact and whether the moving party was entitled to judgment on the law applicable to the established facts."[7] The moving party "has the entire burden of proving that his opponent's case has no merit."[8]
We also exercise our independent judgment in determining the validity of an administrative regulation and in interpreting the underlying statute.[9] But we will not substitute our judgment for that of the agency with regards to the efficacy or wisdom of the regulation.[10] We limit our review of an administrative regulation to: "(1) whether the regulation is reasonable and not arbitrary"; and "(2) whether the regulation is consistent with the statute and reasonably necessary to its purposes."[11] We have explained, however, that "reasonable necessity is not a requirement separate from consistency" and the scope of review should center around consistency with the authorizing statute.[12] We review an administrative regulation with a presumption of validity.[13] The party challenging the regulation has the burden of demonstrating invalidity.[14] An agency's interpretation of its own regulations is reviewed under the reasonable basis standard and "is normally given effect unless plainly erroneous or inconsistent with the regulation."[15]

B. The Department's Regulation Is Consistent with and Reasonably Necessary to Carry Out the Purpose of the LDBA.

1. The Little Davis-Bacon Act

The LDBA was first enacted in 1931 and was modeled after the federal Davis-Bacon *90 Act of the same year.[16] We have previously recognized that "`[t]he fundamental purpose of [Alaska's] Little Davis-Bacon [Act] is to assure that employees engaged in public construction receive at least the prevailing wage,' the same purpose as under the federal legislation."[17] Noting the remedial nature of the LDBA, we have also held that "[the LDBA] is therefore liberally construed to effectuate its beneficent purpose."[18]
The LDBA provides that where a public construction contract involves the employment of mechanics, laborers, or field surveyors, they are to be paid the prevailing wage.[19] Alaska Statute 36.95.010(3) defines "public construction" as:
[T]he on-site field surveying, erection, rehabilitation, alteration, extension or repair, including painting or redecorating of buildings, highways, or other improvements to real property under contract for the state....
(Emphasis added.)
The Department promulgated 8 AAC 30.910, which broadly defines the term "on-site" to cover not only the "physical place where the construction ... will remain when work on it has been completed," but also "other adjacent or nearby property ... which can be reasonably said to be included in the site because of proximity."[20] The regulation contains an example of how the term is to be interpreted for a large airport project such as this one: "on-site" may include "[f]abrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc., ... provided they are dedicated exclusively or nearly so to performance of the contract."[21]

2. The coverage of the LDBA is broader than the federal Davis-Bacon Act and does not require the worker to be employed "directly upon the site of the work."
BOT argues that 8 AAC 30.910(a)'s definition of the term "on-site" impermissibly extends the coverage of the LDBA to employees who do not work within the physical footprint of the public construction project. BOT urges us to interpret the LDBA in the same way that federal courts have interpreted the federal Davis-Bacon Act, limiting coverage to those workers employed "directly upon the site of the work."[22] Recent cases interpreting the federal act require contractors to pay prevailing wage rates only to workers employed directly upon the site of the work.[23]
BOT further argues that because "on-site" is not defined in the statute, the term should be given its common or ordinary meaning: "located at the place connected with a particular activity."[24] Based on this definition, BOT argues that the LDBA was designed to compensate only those employees who work on the job site where construction occurs.
*91 The State maintains that 8 AAC 30.910 is consistent with the LDBA because the legislature intended that employees who are integral to a public construction project receive the prevailing wage, even if they are not working on the actual site where construction is to take place. It relies on differences in the language of the LDBA and the federal act to argue that the LDBA was designed to provide broader and more flexible coverage than the federal act.
In construing the meaning of a legislative enactment, we have rejected the mechanical application of the "plain meaning" rule in favor of a sliding scale approach under which "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[25] The State responds to BOT's plain meaning interpretation and reliance on federal precedent by focusing on a textual difference between the LDBA and its federal counterpart. The federal act requires payment of the prevailing wage rate to workers "employed directly upon the site of the work."[26] The LDBA, on the other hand, requires that prevailing wages be paid to workers "who perfor[m] work on public construction in the state."[27] "Public Construction," in turn, is defined as "on-site" work by AS 36.95.010(3). The State contends that the Legislature's omission of the term "directly upon the site" reflects its intent to broaden the coverage of the LDBA. We agree.
Although the LDBA and the federal Davis-Bacon Act are nearly identical in structure, one notable difference between the acts is the LDBA's deletion of the phrase "directly upon the site of the work." Instead, the LDBA merely requires the work to be "on-site" rather than directly on-site. As a result of this omission, we conclude that federal precedent lends little assistance in interpreting the language of the LDBA at issue in this case. Even where an Alaska statute is modeled after a federal statute, if the differences in the language indicate a difference in legislative intent, "no federal court decision would be [on] point on the issue raised."[28]
Furthermore, where language has been omitted from a model statute, there "is a strong indication that the Legislature did not intend to import such a provision into the state statute."[29] "It can be assumed that changes made in a statute which was drawn from a similar statute in another jurisdiction must have been for the very purpose of avoiding the construction developed elsewhere."[30] We must therefore ascribe meaning to the difference between the LDBA and the statute on which it was modeled. We conclude that the elimination of the language "directly on the site of the work" from the LDBA was intended to provide broader and more flexible coverage than the federal act.[31]
We must next determine whether 8 AAC 30.910(a) is reasonable and consistent with the LDBA. According to AS 36.05.010, a contractor or subcontractor who "performs work on public construction in the state" must pay the prevailing wage rate. "Public construction" is then defined statutorily as the "on-site" work under a contract for the state and use of the term "on-site" implies a geographical limitation.[32] The Department's regulation defining the term "on-site" also contains a geographical limitation based on proximity:

*92 `[O]n-site' means at the physical place where the construction called for in a contract will remain when work on it has been completed and at other adjacent or nearby property used by the contractor or subcontractor in the construction which can reasonably be said to be included in the site because of proximity.[33]
This definition of "on-site" is consistent with the "on-site" language of AS 36.95.010(3). Although application of the regulation will require a fact-specific inquiry in each case, we conclude that the regulation is reasonable and not arbitrary. BOT has therefore failed to meet its burden of proving that 8 AAC 30.910(a) is invalid.

C. The Department's Interpretation of 8 AAC 30.910(a) Is Inconsistent with the Language of the Regulation.

The hearing officer interpreted 8 AAC 30.910(a) differently in this case, concluding that "[a]s long as construction activity is dedicated exclusively or nearly so to performance of a public works project, there is no geographical restriction with regard to distance from the actual site of the project." BOT argues that the hearing officer erred by adopting the Department's interpretation of 8 AAC 30.910 and contends that 8 AAC 30.910(a) does not cover a quarry pit located thirteen miles from the runway improvement project. As discussed above, we agree with BOT that the regulation establishes a geographical restriction for determining whether public construction is "on-site."
The State, on the other hand, advocates a functional interpretation of the regulation, arguing that the determination of whether a public project is "on-site" depends more on the relationship between the contract and the construction project than the geographic proximity of the activity to the construction site. The State relies on an example provided in the text of 8 AAC 30.910(a):
In the case of larger contracts such as for airports, dams or road projects, the scope of "on-site" is necessarily more extensive and includes the whole area in which the contract construction activity will take place. Fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc., are "on-site," provided they are dedicated exclusively or nearly so to performance of the contract.
Although this example illustrates that the scope of "on-site" for larger projects is "necessarily more extensive" than for smaller projects because a larger project may require the contractor or subcontractor to draw its materials from sources away from the project site, the text of the regulation provides that "adjacent" or "nearby" properties and work areas outside the project footprint can only reasonably be said to be included in the site based on their "proximity" to the construction.[34]
Interpreting 8 AAC 30.910(a) to require a finding of geographical proximity for smaller projects, but no geographical restriction for larger ones, as the State urges, would create a distinction that is not found in the regulation or LDBA itself. Although we have concluded that the Legislature's removal of the adverb "directly" in reference to the on-site requirement provided for broader and more flexible prevailing wage coverage, we do not interpret the LDBA or 8 AAC 30.910(a) as disposing of a geographic component altogether.
We conclude that for a large public construction project, such as the airport project in this case, a property will be considered "on-site" only if it is in close geographic proximity to the project footprint. Determination of whether a public construction project is "on-site" will necessarily be fact specific and decided on a case-by-case basis. In making this determination, the agency should consider the normal meaning of the statutory term "on-site" and the regulatory terms "adjacent" and "nearby." In addition, the agency may consider whether the activity could have been carried out at an alternative site closer to the construction and should recognize that deciding if the site of an activity is "nearby" and "proximate" to the construction depends on the setting, the physical lay of *93 the land, and whether the area is developed or undeveloped.
The Department's interpretation of 8 AAC 30.910 is erroneous and inconsistent with the language of the regulation. Because the hearing officer relied on this interpretation, we do not review his factual determinations. Rather, we remand to the Department to determine whether the Cape Nome Quarry is "adjacent" or "nearby" and "can reasonably be said to be included in the site because of proximity" and dedication to the performance of the contract.
In evaluating whether the Cape Nome Quarry is "on-site" under 8 AAC 30.910, the hearing officer should consider the actual time period in which BOT fulfilled its obligation under its contract with Knik: August 1991 to September 1992. We reject BOT's contention on appeal that the appropriate time period is 1991 to 1993, the dates of Knik's contract with the State. BOT's approach is not in accordance with 8 AAC 30.910(a), which requires one to determine exclusivity of the subcontractor's work site "in the course of his performance on a particular contract." As the State points out, "[t]he time period for determining whether a worksite is exclusively devoted to a project is the course of time when the subcontractor performed the subcontract."
We decline to consider BOT's argument that it should be considered a material supplier instead of a subcontractor. BOT proposed this argument for the first time in its opening brief. Because BOT never raised this issue at the administrative level, before the superior court, or in its points on appeal, we consider it waived.[35]

IV. CONCLUSION

We conclude that 8 AAC 30.910(a) is consistent with and necessary to the purposes of the LDBA, and therefore valid. The Department's interpretation of 8 AAC 30.910(a), however, is inconsistent with the language of that regulation. We therefore VACATE the Department's decision and REMAND to the Department for proceedings consistent with this opinion.
COMPTON, J., not participating.
NOTES
[1] AS 36.05.010-.110.
[2] 8 Alaska Administrative Code (AAC) 30.910 (1996) provides in part:

(a) In AS 36.95.010(3), "on-site" means at the physical place where the construction called for in a contract will remain when work on it has been completed and at other adjacent or nearby property used by the contractor or subcontractor in the construction which can reasonably be said to be included in the site because of proximity. For example, if a small office building is being erected, "on-site" will normally include no more than the building itself and its grounds and other land or structures "down the block" or "across the street" which the contractor or subcontractor uses in the course of his performance on a particular contract. In the case of larger contracts such as for airports, dams or road projects, the scope of "on-site" is necessarily more extensive and includes the whole area in which the contract construction activity will take place. Fabrication plants, mobile factories, batch plants, borrow pits, job headquarters, tool yards, etc., are "on-site," provided they are dedicated exclusively or nearly so to performance of the contract.
[3] In its opening brief, BOT asserts that DOTPF had assured BOT that the quarry work would be "off-site" for the purposes of the LDBA. But BOT's reliance on DOTPF's statement is not at issue in this case because BOT withdrew the defense at the administrative level.
[4] See Handley v. State, Dep't of Revenue, 838 P.2d 1231, 1233 (Alaska 1992).
[5] Id.
[6] See Farmer v. State, 788 P.2d 43, 46 n. 8 (Alaska 1990).
[7] Zeman v. Lufthansa German Airlines, 699 P.2d 1274, 1280 (Alaska 1985) (quoting Brock v. Alaska Int'l Indus., 645 P.2d 188, 190 n. 6 (Alaska 1982)).
[8] Williams v. Municipality of Anchorage, 633 P.2d 248, 250 (Alaska 1981) (citation and quotation omitted).
[9] See Anchorage Sch. Dist. v. Hale, 857 P.2d 1186, 1188 n. 3 (Alaska 1993).
[10] See Kelso v. Rybachek, 912 P.2d 536, 540 (Alaska 1996).
[11] Kachemak Bay Watch, Inc. v. Noah, 935 P.2d 816, 827 (Alaska 1997) (citation omitted).
[12] State, Bd. of Marine Pilots v. Renwick, 936 P.2d 526, 531-32 (Alaska 1997) (citing State, Dep't of Revenue v. Cosio, 858 P.2d 621, 624 (Alaska 1993)).
[13] See Kelso, 912 P.2d at 540.
[14] See id.
[15] State, Dep't of Highways v. Green, 586 P.2d 595, 602 n. 21 (Alaska 1978) (citations omitted); see also Lake & Peninsula Borough v. Local Boundary Comm'n, 885 P.2d 1059, 1062 n. 11 (Alaska 1994).
[16] 40 U.S.C. § 276a (1986); see also Fowler v. City of Anchorage, 583 P.2d 817, 821 n. 8 (Alaska 1978).
[17] Western Alaska Bldg. & Constr. Trades Council v. Inn-Vestment Assocs., 909 P.2d 330, 333 n. 8 (Alaska 1996) (quoting City and Borough of Sitka v. Construction & Gen. Laborers Local 942, 644 P.2d 227, 232 & n. 11 (Alaska 1982)).
[18] See id. at 333 (citation omitted).
[19] See AS 36.05.070(a).
[20] 8 AAC 30.910(a).
[21] Id. (emphasis added).
[22] The Davis-Bacon Act, 40 U.S.C. § 276a(a), provides in part:

The advertised specifications for every contract... to which the United States ... is a party, for construction, alteration, and/or repair ... and which requires or involves the employment of mechanics and/or laborers shall contain a provision stating the minimum wages ... shall be based upon the wages that will be ... prevailing ...; and every contract based upon these specifications shall contain a stipulation that the contractor or his subcontractor shall pay all mechanics and laborers employed directly upon the site of the work, [the prevailing wage].
(Emphasis added.)
[23] See L.P. Cavett Co. v. United States Dep't of Labor, 101 F.3d 1111, 1114-15 (6th Cir.1996); Ball, Ball & Brosamer, Inc. v. Reich, 24 F.3d 1447, 1452-53 (D.C.Cir.1994); Building & Constr. Trades Dep't v. United States Dep't of Labor Wage Appeals Bd., 932 F.2d 985, 990 (D.C.Cir.1991).
[24] Webster's Ninth New Collegiate Dictionary 825 (1990).
[25] Muller v. BP Exploration (Alaska), Inc., 923 P.2d 783, 787-88 (Alaska 1996).
[26] 40 U.S.C. § 276a(a) (emphasis added).
[27] AS 36.05.010.
[28] Cesar v. Alaska Workmen's Compensation Bd., 383 P.2d 805, 807 (Alaska 1963), overruled on other grounds by Providence Wash. Ins. Co. v. Grant, 693 P.2d 872, 877-78 (Alaska 1985); see also Everett Concrete Prods., Inc. v. Department of Labor & Indus., 109 Wash.2d 819, 748 P.2d 1112, 1115 (Wash.1988).
[29] J.R. Norton v. General Teamsters Local 890, 208 Cal.App.3d 430, 256 Cal.Rptr. 246, 253 (Cal. App.1989) (citation omitted).
[30] State v. Greenwald, 454 A.2d 827, 830 (Me. 1982).
[31] See Everett Concrete, 748 P.2d at 1115-16 (interpreting Washington prevailing wage act more broadly given omission of the phrase "directly upon the site of the work").
[32] AS 36.95.010(3).
[33] 8 AAC 30.910(a) (emphasis added).
[34] Id.
[35] See Gunderson v. University of Alaska, Fairbanks, 902 P.2d 323, 327 n. 5 (Alaska 1995).