Lowell C. LONG, Chris Giller, Deloise A. Giller, Kenneth Head, Ronald Long, Roy Matson, Richard Myers, and Charles D. Webster, Appellants,

v.

INTERSTATE READY–MIX, L.L.C., and Fru Con Construction Corporation, Respondents.

No. WD 60170.

Missouri Court of Appeals, Western District.

April 30, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

Application for Transfer Denied Sept. 24, 2002.

Ronald C. Gladney, St. Louis, for Appellants.

Kimberly F. Lowe, Waynesville, for Respondents.

Before HAROLD L. LOWENSTEIN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Lowell C. Long, Chris Giller, Deloise A. Giller, Kenneth Head, Ronald Long, Roy Matson, Richard Myers, and Charles D. Webster (appellants) appeal from a summary judgment order in favor of Interstate Ready–Mix, L.L.C., and Fru Con Construction Corporation (respondents). Appellants' petition claimed that they were not paid appropriately under the Prevailing Wage Act for certain work performed in relation to a public works project. In granting the respondents' motion for summary judgment, the trial court concluded that the regulation relied upon by the appellants, 8 CSR § 30–3.020, was invalid

because it conflicted with § 290.230 of the Prevailing Wage Act.[1] Therefore, the trial court concluded that the appellants had not alleged any facts that entitled them to a judgment as a matter of law. Because 8 CSR 30–3.020(2) does not conflict with § 290.230, the trial court's entry of summary judgment was erroneous and is reversed.

### Factual and Procedural Background

Fru Con Construction (Fru Con) contracted with the State of Missouri to build the South Central Correction Center in Licking, Missouri (the Prison Site). The contract provided that the prevailing hourly rate of wages be paid pursuant to § 290.230. The Missouri Division of Labor Standards promulgated Annual Wage Order No. 4 for Texas County, establishing the hourly rate of wages on the public works project.

Interstate Ready–Mix, L.L.C. (Ready–Mix) signed a purchase order with Fru Con and Ready–Mix agreed to deliver concrete to the Prison Site. Ready–Mix's concrete plant was located in St. Robert, Missouri, approximately sixty miles from the Prison Site. Consequently, Ready–Mix leased some land (the Leased Site) from the City of Licking, Missouri, two acres of unimproved real property and erected a batch plant[2] in order to meet its obligations under the purchase order with Fru Con. The Leased Site was located approximately one mile from the Prison Site, and Ready–Mix leased the property at essentially the same time Ready–Mix signed its purchase order with Fru Con. The land leased by Ready–Mix for the batch plant was neither contiguous nor continuous to the Prison Site. Ready–Mix transported the concrete a distance of three-quarters of a mile from the Leased Site to the Prison Site.

The appellants were employees of Ready–Mix who were not paid at the prevailing wage rate. The appellants performed job duties including: driving and operating a concrete mixer truck from the batch plant to the Prison Site; driving and operating a concrete truck to other businesses in Licking and surrounding areas; maintaining and repairing concrete mixer trucks; working at Ready–Mix's concrete plant in St. Robert, Missouri; and operating the batch plant in Licking, Missouri. Not one appellant performed any actual construction work on the Prison Site. In fact, the purchase order between Fru Con and Ready–Mix specifically excluded Ready–Mix's obligation to install or place concrete on the Prison Site. However, appellants did spend ninety to ninety-five percent of their time transporting concrete from the batch plant to the Prison Site, and almost all of the output of the batch plant was directed to the Prison Site.

The appellants filed a petition against the respondents claiming that they were entitled to the prevailing wage rate for work performed at the batch plant on the Leased Site, and for the delivery of concrete to the Prison Site. The appellants relied upon 8 CSR 30–3.020(2). The respondents filed a motion for summary judgment on the basis that the regulation cited by the appellants should not be enforced because it is in conflict with § 290.230. In granting the respondents' motion, the trial court agreed that a conflict existed and declared 8 CSR 30–3.020 invalid.

This appeal follows.

---

1. All statutory references are to RSMo 2000.

2. A batch plant is "an assemblage of bins, conveyors, and weighing equipment arranged for the purpose of weighing the materials entering into a batch of concrete." Webster's Third New International Dictionary 185 (1971).

## Standard of Review

The standard of review for a summary judgment is governed by Rule 74.04[3] and set out in *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In reviewing a grant of summary judgment, we examine the entire record to determine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. Rule 74.04(c)(3); *Dial v. Lathrop R–II School Dist.*, 871 S.W.2d 444, 446 (Mo. banc 1994). We will review the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. We accord the non-movant the benefit of all reasonable inferences from the record. *Id.* Because the propriety of summary judgment is purely an issue of law and is founded upon the record, our review is *de novo. Id.*

## Legal Analysis

■ The Prevailing Wage Act, §§ 290.210–290.340 (the Act) was enacted by the Missouri General Assembly in 1957. *City of Kennett v. Labor & Indus. Relations Comm'n,* 610 S.W.2d 623, 625 (Mo. banc 1981). Although Missouri courts have not specifically discussed the purpose behind the Prevailing Wage Act, the law appears to be based on, and have a similar purpose to, the federal Davis–Bacon Act, 40 USCA § 276a *et seq.* (the federal Act), which is designed to ensure that workers on public projects be paid reasonable wages. *Henry County Water Co. v. McLucas,* 21 S.W.3d 179, 181 (Mo.App. W.D.2000), *overruled on other grounds by Div. of Labor Standards, Dep't of Labor*

*and Indus. Relations, State of Mo. v. Friends of the Zoo of Springfield, Mo., Inc.,* 38 S.W.3d 421, 422–23 (Mo. banc 2001). Thus, the Act was enacted "in the interest of public welfare." *Hagan v. Dir. of Revenue,* 968 S.W.2d 704, 706 (Mo. banc 1998); *see City of Joplin v. Indus. Comm'n,* 329 S.W.2d 687, 693–94 (Mo. banc 1959) (stating that the Act as a whole "indicates more than mere local interest"). Due to the remedial nature of the Prevailing Wage Act, we must interpret it broadly so as to accomplish the greatest public good. *See Hagan,* 968 S.W.2d at 706; *see also Envtl. Prot., Inspection, Consulting, Inc. v. City of Kansas City,* 37 S.W.3d 360, 369 (Mo.App. W.D.2000) (finding Public Works Prompt Payment Statute, § 34.057, is remedial and requires liberal interpretation).

■ "Under the Act, all workmen employed by private contractors in the construction of public works must be paid not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed." *City of Kennett,* 610 S.W.2d at 625 (citing § 290.230). In particular, "[o]nly such workmen as are directly employed by contractors or subcontractors in actual construction work *on the site of the building or construction job* shall be deemed to be employed upon public works." § 290.230.1 (emphasis added). The Act's definitional section, § 290.210, does not define "on the site of the building or construction job." However, the Department of Labor and Industrial Relations (the Department) promulgated 8 CSR 30–3.020(2),[4] which provides an extensive definition:

---

3. All rule references are to Missouri Supreme Court Rules (2001) unless otherwise indicated.

4. We recognize that this court's Southern District sustained a trial court's invalidation of 8 CSR 30–3.020(2) in *State Department of Labor & Industrial Relations, Division of Labor*

The term *site of the building or construction job* means the physical place(s) where the public works are to be constructed, and also means other adjacent or nearby property used by the contractor or subcontractor in that construction which can reasonably be said to be included in the site. Except as otherwise provided in this section, fabrication plants, mobile factories, *batch plants*, borrow pits, job headquarters, tool yards and the like, are part of the site of the building or construction job provided they are dedicated in a substantial degree to the performance of the public works project, and are so located in proximity to the actual construction location that it would be reasonable to include them. The dedication of seventy-five percent (75%) or more of the output of a fabrication plant, batch plant and the like, to the public works project raises a rebuttable presumption that the facility is part of the site of the building or construction job. The presumption may be rebutted by evidence showing that the facility was established for other legitimate commercial purposes that make the facility useful well after the public works project has been completed. Not included in the site of the building or construction job are permanent home offices, branch plant establishments, fabrication plants and tool yards of a contractor or subcontractor whose location and continuance in operation are determined wholly without regard to a particular public works project. In addition, fabrication plants, batch plants, borrow pits, job headquarters, tool yards and the like, of a commercial supplier or materialman which are established by a supplier of materials for the project before opening of bids and not on the project site are not included in the site of the building or construction job. The permanent, previously established facilities are not a part of the site of the building or construction job, even where the operations for a period of time may be dedicated exclusively, or nearly so, to the performance of a public works project.

8 CSR 30–3.020(2) (emphasis added).

Appellants relied on this regulation in bringing their lawsuit. The trial court, however, found that the regulation conflicts with § 290.230. As it pertains to our particular facts, the trial court found that the appellants were not entitled to the prevailing wage rate based upon a plain reading of § 290.230 because they admittedly performed no construction work on the Prison Site. The trial court determined that 8 CSR 30–3.020, relied upon by the appellants, is invalid because the regulation includes a category of workmen that the legislature implicitly excluded. Furthermore, the trial court found that the regulation is invalid to the extent it seeks to impose a duty upon an additional class of persons or entities whose employees

*Standards v. Board of Public Utilities of City of Springfield*, 910 S.W.2d 737 (Mo.App. S.D. 1995). The case is inapposite to the present appeal as it concerned "a refinement of the statutory definition of 'construction.'" *Id.* at 744. "Construction" is defined in § 290.210(1). The subject regulation attempted to define "major repair," which is part of the statutory definition of "construction," to mean "repair of an existing facility," which was already included as part of the statutory definition of "maintenance work" contained in § 290.210(4). *See Bd. of Pub. Utilities*, 910 S.W.2d at 744. Therefore, there was clearly a direct conflict or inconsistency between § 290.210 and the subject regulation that led to the regulation's invalidity. *See id.* The regulation at issue in this case, however, took effect after the Southern District's case was decided. The contested part of the regulation here involves the definition of "site of the building or construction job," and "site of the building or construction job" is a phrase that is undefined in the Prevailing Wage Act.

performed no actual construction work on the site of the public works project.

In promulgating the regulation, the Department cited its general enabling statute, which grants the Department the authority to "establish rules and regulations for the purpose of carrying out the provisions of sections 290.210 to 290.340." § 290.240.2. We are cognizant of "the well-established principles that administrative rules and regulations issued under authority of an act should not be judicially invalidated except for weighty reasons and are to be sustained unless unreasonable and plainly inconsistent with the act." *Associated Gen. Contractors of Mo. v. Dep't of Labor & Indus. Relations*, 898 S.W.2d 587, 590 (Mo.App. W.D.1995). Even so, administrative regulations are void if they attempt to modify or extend a statute. *Cmty. Bancshares, Inc. v. Sec'y of State*, 43 S.W.3d 821, 824 (Mo. banc 2001). Thus, the central issue is whether the phrase "on the site of the building or construction job" as used in § 290.230.1 is in conflict with the definition contained in 8 CSR 30–3.020(2).

In interpreting a statute, our primary goal is to determine "the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Lonergan v. May*, 53 S.W.3d 122, 126 (Mo.App. W.D. 2001) (quoting *Farmers' & Laborers' Co-op. Ins. Ass'n v. Dir. of Revenue*, 742 S.W.2d 141, 145 (Mo. banc 1987)). Where the language of the statute is clear and unambiguous, there is no room for construction. *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988). "To determine whether a statute is clear and unambiguous, this court looks to whether the language is plain and clear to a person of ordinary intelligence." *Russell v. Mo. State Employees' Ret. Sys.*, 4 S.W.3d 554, 556 (Mo.App. W.D.1999). The ordinary meaning of a word is usually derived from the dictionary when a word used in a statute is not defined therein. *Preston v. State*, 33 S.W.3d 574, 578 (Mo. App. W.D.2000). "Only when the language is ambiguous or if its plain meaning would lead to an illogical result will the court look past the plain and ordinary meaning of a statute." *Lonergan*, 53 S.W.3d at 126.

In its entirety, the § 290.230 reads as follows:

1. Not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed, and not less than the prevailing hourly rate of wages for legal holiday and overtime work, shall be paid to all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work. *Only such workmen as are directly employed by contractors or subcontractors in actual construction work on the site of the building or construction job shall be deemed to be employed upon public works.*

2. When the hauling of materials or equipment includes some phase of construction other than the mere transportation to the site of the construction, workmen engaged in this dual capacity shall be deemed employed directly on public works.

§ 290.230 (emphasis added).

Subsection 1 sets out the general rule that "all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work" *shall* be paid no less than the prevailing hourly rate of wages. The second sentence then limits the class of workmen entitled to the prevailing rate: only those "in actual construction work on the site of the building or construction job

shall be deemed to be employed upon public works." By reading the second sentence of subsection 1 in conjunction with subsection 2, § 290.230 places a geographical limitation on the workmen entitled to prevailing wages. It has been stated that second sentence of subsection 1 "expresses the true intent of the legislature and should control its application." *City of Joplin*, 329 S.W.2d at 692 (comparing § 290.230.1 with § 290.220). The only question on appeal, however, is the meaning of the phrase "on the site of the building or construction job" contained in the second sentence of § 290.230.

As previously stated, the Prevailing Wage Act does not specifically define "on the site of the building or construction job." So, we rhetorically pose the question: Does the plain language of the phrase limit the Act's application to workmen engaged at the physical location of the final project as found by the trial court, or could the phrase also cover, as appellants suggest and as the Department included in its regulation, an area in geographic proximity to the final project at which work necessary for completion of the public works project is performed? Certainly, the first meaning comports with the phrase as used in common parlance. However, because we are bound to interpret the phrase broadly, *see Hagan*, 968 S.W.2d at 706, the second meaning is equally valid. In building a public works project, such as a prison, it is generally understood that work necessary for completion of the project will "spill over" into nearby areas not occupied by the final construction project, and, thus, "site of the building or construction job" could, in many cases, be broader and more encompassing. Thus, using the ordinary meaning of the phrase, "on the site of the building or construction job" is susceptible to more than one interpretation and is, therefore, ambiguous.

■■■ "In construing an ambiguous statute, the ultimate guide is the intent of the legislature." *Lincoln Indus., Inc. v. Dir. of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001). We therefore must ascertain the legislature's intent in choosing the phrase "on the site of the building or construction job" in order to determine whether the 8 CSR 30–3.020 conflicts with § 290.230.1. On this issue, we find the decisions of the highest courts of two other states particularly noteworthy.

The Supreme Court of Alaska addressed an issue similar to the one before us in *Board of Trade, Inc. v. Department of Labor, Wage & Hour Administration*, 968 P.2d 86 (Alaska 1998). Alaska's version of the Davis–Bacon Act, referred to as the "Little Davis–Bacon Act" (the LBDA), provided that mechanics, laborers, or field surveyors were to be paid the prevailing wage if they were involved in public construction, which was defined as the *"on-site* field surveying, erection, rehabilitation, alteration, extension or repair, including painting or redecorating of buildings, highways, or other improvements to real property under contract for the state . . . ." *Id.* at 90 (quoting Alaska Statute 36.95.010(3)). The Alaska Department of Labor promulgated an administrative regulation that defined "on-site" to cover "not only the 'physical place where the construction . . . . will remain when work on it has been completed,' but also 'other adjacent or nearby property . . . . which can be reasonably said to be included in the site because of proximity.' " *Id.* (quoting 8 ACC 30.910(a)). The Court found significant the fact that the federal Act included the phrase "directly upon the site of the work," whereas the LBDA merely required the work to be "on-site," and concluded "that the elimination of the language 'directly on the site of the work'

from the LBDA was intended to provide broader and more flexible coverage than the federal act." *Id.* at 91 (citing *Everett Concrete Prods., Inc. v. Dep't of Labor & Indus.*, 109 Wash.2d 819, 748 P.2d 1112, 1115–16 (1988) (interpreting Washington prevailing wage act more broadly given omission of the phrase "directly upon the site of the work")). Because the statutory term "on-site" implied a geographical limitation, and the administrative regulation also contained a geographical limitation based on proximity, the Court determined that the regulation was consistent with the statute and, therefore, was valid.[5] *See id.* at 91–92.

More recently, the Supreme Court of Nevada interpreted its version of the Davis–Bacon Act in *State of Nevada, Department of Business and Industry, Office of the Labor Commissioner v. Granite Construction Co.*, 40 P.3d 423 (Nev.2002). Nevada's version of the federal Act, also referred to as the "Little Davis–Bacon Act," in effect at the relevant time provided, "Workmen employed by contractors or subcontractors or by public bodies at the site of the work and necessary in the execution of any contract for public works are deemed to be employed on public works." *Id.* at 426 (quoting NRS 338.040 (1999)). Turning to legislative intent, the Court found that the "directly upon" language used in the federal Act was conspicuously absent from their LDBA, and, thus, the Nevada Legislature's omission suggested that it intended geographic proximity to be just one factor in determining coverage under the LDBA. *See id.* at 427–28. The Court noted:

> Our reasoning is consistent with the manner in which other states have inter-

preted their prevailing wage laws. Although each state's statute and/or regulations are not identical to ours, other states have broadly interpreted their prevailing wage laws to encompass activities performed at ancillary locations based upon the failure of their state statutes to use the federal "directly upon" language.

*Id.* at 428 (citing *Sharifi v. Young Bros., Inc.*, 835 S.W.2d 221, 223 (Tex.App.1992) (holding that truck driver delivering materials to a public works construction site was entitled to the prevailing wage); *Superior Asphalt & Concrete Co. v. Dep't of Labor & Indus. of the State of Wash.*, 84 Wash.App. 401, 929 P.2d 1120, 1123 (1997) (holding that truck drivers delivering material and incorporating materials into the project are entitled to prevailing wages); *Green v. Jones*, 23 Wis.2d 551, 128 N.W.2d 1, 7 (1964) (holding that truck drivers whose materials were distributed over the surface of the roadway immediately after their arrival at construction site were entitled to prevailing wages)).

These two cases are instructive. The Davis–Bacon Act requires the payment of prevailing wage rates to "mechanics and laborers employed directly upon the site of the work," while Missouri's Prevailing Wage Act requires the payment to workmen "on the site of the building or construction job." *Compare* 40 U.S.C. § 276a *with* § 290.230.1. By omitting "directly" from the Act, the General Assembly has evinced an intent to broaden the scope of Missouri's law beyond what is encompassed in the federal statute by requiring only workmen to merely be "on the site of the building or construction job." As such, the definition provided by 8 CSR 30–3.020

---

5. The case was reversed, however, because the Alaska Department of Labor interpreted its regulation to require a finding of geographical proximity for smaller projects, but no geographical restriction for larger ones, which was a distinction that was not found in the regulation or the LDBA. *Bd. of Trade,* 968 P.2d at 92.

is also consistent with the language of § 290.230.1. The regulation defines "site of the building or construction job" as the physical place or places where the public works are to be constructed and further includes "other adjacent or nearby property used by the contractor or subcontractor in that construction which can reasonably be said to be included in the site." 8 CSR 30–3.020(2).

The subject regulation does not arbitrarily or unreasonably expand the phrase beyond the scope of what the legislature intended to be included within § 290.230. The regulation speaks only to certain undertakings, including batch plants, which are "dedicated in a *substantial* degree to the performance of the public works project, and are so located in proximity to the actual construction location that it would be *reasonable* to include them." 8 CSR 30–3.020(2) (emphasis added). Furthermore, the regulation specifically excludes from its definition permanent home offices, branch plant establishments, fabrication plants, and tool yards of a contractor or subcontractor if the public works project has no bearing on the location and continuance in operation of these facilities. *Id.* In addition, those situations that would otherwise be included are specifically "not included in the site of the building or construction job" if established by a supplier before the opening of bids. *Id.* Overall, the regulation speaks only to a well-defined set of limited circumstances in which a contractor or subcontractor might seek to avoid payment of the prevailing wage rates by "setting up shop" beyond the confines of the final project site after being awarded a public works contract or subcontract, and, in this regard, the regulation furthers the policy of the Prevailing Wage Act as expressed in § 290.220. *See Friends of the Zoo,* 38 S.W.3d at 423 (stating that the Act may not be circumvented "by a 'carefully constructed legal facade.' ")

(quoting *State ex inf. Webster ex rel. Div. of Labor Standards v. City of Camdenton,* 779 S.W.2d 312, 316 (Mo.App. S.D.1989)). Under the regulation, each situation is to be addressed on a case-by-case basis, but 8 CSR 30–3.020 is not so inconsistent and unreasonable so as to be in conflict with § 290.230. Although "[t]he dedication of seventy-five percent (75%) or more of the output ... to the public works project raises a rebuttable presumption that the facility is part of the site of the building or construction job," the presumption can be overcome if "the facility was established for other legitimate commercial purposes that make the facility useful well after the public works project has been completed." 8 CSR 30–3.020(2). Therefore, we are unable to conclude that 8 CSR 30–3.020(2) is plainly inconsistent with the letter or spirit of the Prevailing Wage Act or the legislature's broad intent.

The approach taken by the trial court, however, renders inoperative and meaningless the portion of § 290.220 that provides that "all workmen employed by or on behalf of any public body engaged in public works" should be paid "a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed." In essence, the trial court interpreted the Act in the same manner that federal courts have interpreted the federal Act by limiting applicability to those workers employed "directly upon the site of the work." *See, e.g., L.P. Cavett Co. v. United States Dep't of Labor,* 101 F.3d 1111, 1114–15 (6th Cir.1996); *Ball, Ball & Brosamer, Inc. v. Reich,* 24 F.3d 1447, 1452–53 (D.C.Cir.1994). As previously discussed, the General Assembly intended a broader application of the Act, and, therefore, federal cases interpreting the federal Act offer no guidance because of the require-

ment that work under the federal Act be performed "directly upon the site."

This case was decided on respondents' motion for summary judgment. Summary judgment is proper if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(3). Respondents did not meet their burden for summary judgment. *See ITT Commercial Fin.*, 854 S.W.2d at 371. Respondents contend, alternatively, that application of § 290.230.2 takes appellants beyond the purview of the Prevailing Wage Act, but, if appellants' activities occurred at a location that "can reasonably be said to be included *in the site,*" 8 CSR 30–3.020(2) (emphasis added), the exclusion of "the mere transportation *to the site* of the construction," § 290.230.2 (emphasis added), does not apply. There is also an issue of material fact as to whether the appellants in this case were directly employed by contractors or subcontractors *in actual construction work* at the Leased Site as required by § 290.230.1.

### CONCLUSION

The trial court inappropriately denied the appellants the opportunity to prove they were entitled to payment of the prevailing wage rate. Consequently, the entry of summary judgment was erroneous. This case is reversed and remanded for further proceedings not inconsistent with this opinion.

HAROLD L. LOWENSTEIN, Presiding Judge, and RONALD R. HOLLIGER, Judge, concur.