STATE of Missouri, ex rel., Jeremiah W. NIXON, Missouri Attorney General, and Office of Administration, State of Missouri, Plaintiffs–Appellants,

v.

FRU–CON CONSTRUCTION CORP., et al., Defendants–Respondents.

No. ED 80516.

Missouri Court of Appeals, Eastern District, Division Five.

Nov. 12, 2002.

Michael A. Pritchett, St. Louis, MO, for appellants.

Kimberly F. Lowe, Waynesville, MO, Ronald C. Gladney, James R. Kimmey III, St. Louis, MO, for respondents.

CHARLES B. BLACKMAR, Senior Judge.

The Attorney General sues on behalf of certain employees of Respondent Interstate Ready–Mix, L.L.C., to require the employer to pay prevailing wages for their work in connection with the supplying of ready-mixed concrete to the construction site of a prison being built in Licking, Missouri, as required by Section 290.230.1

RSMo.2000.[1] The court below entered summary judgment for the defendants, finding that the work was not performed on the construction site and that a regulation relied on by the appellants, 8 C.S.R. 30–3.020, was invalid. We reverse the judgment of the trial court and remand for further consistent proceedings.

A factually identical case was recently decided by the Western District, *Long v. Interstate Ready–Mix*, 83 S.W.3d 571 (Mo. App. W.D. 2002). The Supreme Court denied transfer on September 24, 2002. We agree with the comprehensive scholarly opinion of Judge Newton, and borrow from it in stating the governing facts, without use of quotation marks.

Interstate Ready–Mix, L.L.C. (Ready–Mix) signed a purchase order with Fru–Con Construction Corp. (the contractor) and agreed to deliver concrete to the prison site. Ready–Mix's concrete plant was located in St. Robert, Missouri, approximately sixty miles from the prison site. Ready–Mix leased approximately two acres of unimproved land and erected a batch plant in order to meet its obligations under the purchase order. The leased site was approximately one mile from the construction site. It was neither contiguous nor continuous to the prison site. Ready–Mix transported the concrete a distance of three-quarters of a mile from the leased site to the prison site.

The appellants were employees of Ready–Mix who were not paid the prevailing wage rate. The employees performed job duties including: driving and operating a concrete mixer truck from the batch plant to the prison site; driving and operating a concrete truck to other businesses in Licking and surrounding areas; maintaining and repairing concrete mixer trucks; working at Ready–Mix's concrete plant in St. Robert; and operating the batch plant in Licking. Not one appellant performed any actual construction work on the prison site. However, the employees did spend ninety to ninety-five percent of their time transporting concrete from the batch plant to the prison site, and almost all of the output of the batch plant was directed to the prison site.

The employees in the *Long* case relied on 8 C.S.R. 30–3.020(2), providing that "[t]he dedication of seventy-five percent (75%) or more of the output of a ... batch plant ... to the public works project raises a rebuttable presumption that the facility is part of the site of the building or construction job." The appellants cite this provision. Both the trial judge in *Long* and the judge in the court below held that the regulation was invalid by reason of conflict with the governing statute. The Western District disagreed, holding that the regulation "is not so inconsistent and unreasonable so as to be in conflict with § 290.230."

We elect to follow the Western District. The *Long* opinion cites numerous cases from other jurisdictions construing similar statutes, and distinguishes *State Department of Labor & Industrial Relations, Division of Labor Standards v. Board of Public Utilities of the City of Springfield*, 910 S.W.2d 737 (Mo.App. S.D.1995), as involving a different regulation. We agree with the rationale of the Western District. The Supreme Court has cautioned about reading too much into the denial of an application for transfer, but the denial suggests that that Court found no substantial conflict with other decisions.

The Western District in *Long* concluded as follows:

> Respondents did not meet their burden for summary judgment. (cite omitted).

1. All further statutory references are to RSMo.2000, unless otherwise indicated.

Respondents contend, alternatively, that application of § 290.230.2 takes appellants beyond the purview of the Prevailing Wage Act, but, if appellants' [the workers'] activities occurred at a location that "can reasonably be said to be included *in the site*," 8 CSR 30–3.020(2) (emphasis added), the exclusion of "the mere transportation *to the site* of the construction," § 290.230.2 (emphasis added), does not apply. There is also an issue of material fact as to whether the appellants in this case were directly employed by contractors or subcontractors *in actual construction work* at the Leased Site as required by § 290.230.1.

The Western District therefore reversed and remanded for further proceedings consistent with its opinion. We do likewise.[2]

LAWRENCE E. MOONEY, C.J., concurs.

LAWRENCE G. CRAHAN, J., dissents in separate opinion.

LAWRENCE G. CRAHAN, Judge, dissenting.

I respectfully dissent. I cannot agree with the reasoning or the holding of *Long v. Interstate Ready–Mix*, 83 S.W.3d 571 (Mo.App. W.D. 2002).

The statute at issue in this case, section 290.230 RSMo 2000, provides:

1. Not less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed, and not less than the prevailing hourly rate of wages for legal holiday and overtime work, shall be paid to all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work. Only such workmen as are directly employed by contractors or subcontractors *in actual construction work on the site of the building or construction job* shall be deemed to be employed upon public works.

(emphasis added).

In *Long*, the court acknowledged the primary rule of statutory construction that we are to determine the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning. *Long*, 83 S.W.3d 571, 578 (citing *Lonergan v. May*, 53 S.W.3d 122, 126 (Mo.App.2001)). Indeed, we are so instructed by statute. Section 1.090 RSMo 2000. The Missouri Supreme Court has further defined the phrase "plain meaning of words" as the meaning "found in the dictionary ... unless the legislature provides a different definition." *Lincoln Indus., Inc. v. Director of Revenue*, 51 S.W.3d 462, 465 (Mo. banc 2001).

Having acknowledged this overriding principle of statutory construction, the court in *Long* then proceeds to completely disregard it. The court never acknowledges or discusses the dictionary definitions of the terms used in the statute. Instead, acknowledging that the phrase "on the site of the building or construction job" would, in common parlance, mean at the physical location of the public work being constructed, the court looked to the remedial purpose of the statute to consider whether "on the site" could mean "near the site" or, as the Commission interpreted it in its regulation "other adjacent or nearby property used by the contractor or

---

2. Respondents' Motion to Strike Certain Respondent Employees' Brief in Support of Appellants' Brief is overruled.

subcontractor in that construction which can reasonably be said to be included in the site." In other words, the court disregarded the plain and ordinary meaning of the terms used by the legislature by adopting a meaning it viewed as more consistent with the legislative purpose of the act. Although the court did not find the words used in the act to be ambiguous standing alone, according the terms their plain and ordinary meaning might not, in the court's view, achieve the legislature's remedial purpose, thus rendering the phrase ambiguous.

This sort of interpretative legerdemain is directly contrary to Missouri law. Perceived legislative intent cannot be used to create an ambiguity that does not otherwise exist. "When a statute is clear and ambiguous, extrinsic aids to statutory construction cannot be used." *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596, 599 (Mo. banc 1977). Missouri courts do not have the authority to read into a statute a legislative intent that is contrary to its plain and ordinary meaning. *State v. Rowe*, 63 S.W.3d 647, 650 (Mo. banc 2002). Indeed, in *Rowe*, the Missouri Supreme Court interpreted the statute at issue in accordance with the plain meaning of the words used by the legislature despite the fact that it was unlikely that the result was what the legislature intended. *Id.*

According to WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY, 2d ED. (1983), "construction" means "the act or process of building and forming; fabrication; erection," and "site" means "a piece of land considered from the standpoint of its use for some specified purpose," or "the place where something is, is to be, or was located." Therefore, according to the plain and ordinary meaning of the terms used by the legislature in section 290.230.1, the phrase "workmen ... employed ... in actual construction work on the site of the building or construction job" means workers directly involved in erection of the public works structure at the place where the structure is or is to be located. It is not susceptible of an interpretation that would encompass workmen who are merely mixing materials which will be used by other workmen to erect the structure at a location a mile away from the place the structure will stand or workmen who merely deliver such material to the construction site.[1]

Moreover, even if those mixing concrete at the remote location could be considered to be working "on the site of the building or construction job," defendants would still be entitled to summary judgment because the workmen at issue were not engaged in "actual construction." Mixing and transporting concrete is not the act or process of building and forming a structure. Building and forming a structure with concrete occurs when the concrete is poured into forms and allowed to set (which, of course, can only occur on the site of the building or construction job). It is undisputed that the workmen in this case were not involved in pouring or forming concrete. They merely mixed the concrete and delivered it to others so that they could do so. Although the work they performed was undoubtedly necessary to permit others to engage in actual construction, their activities did not constitute

1. The mischief apparent in the Commission's more expansive yet amorphous interpretation of the law is apparent upon considering that public works contracts must be bid. Under the Commission's interpretation, contractors cannot determine with certainty who will be covered under the law without litigating the question of whether it is "reasonable" to view a workplace as "on the site." Such uncertainty cannot help but drive up the bids. In contrast, according the terms used by the legislature their plain and ordinary meaning produces a bright line test that can be readily applied.

actual construction within the plain meaning of the statute.[2]

For the foregoing reasons, I would affirm the judgment.

2. In support of its contention that the workers were engaged in construction, the State relies on regulation 8 C.S.R. 30–3.020, which provides: "The manufacture or furnishing of materials, articles, supplies or equipment is not construction of public works within the meaning of the Prevailing Wage Law unless conducted in connection with and at the site of construction." Whether an activity is construction cannot logically be dependent on where it is performed. It is wholly a function of what is performed. If the legislature had intended all work performed at the construc-

tion site to be included in the Prevailing Wage Law, it would not have limited the work performed to "actual construction" work. Indeed, the legislature's use of the term "actual" indicates a clear intent to limit application of the law to construction in its narrowest commonly understood meaning i.e., actual erection or assembly of the structure.