David **ALLISON** and James A. McConaghy, Individually and as partners in a joint venture, and Randal L. Allison, Appellants,

v.

**STATE of Alaska, Appellee.**

No. 3716.

Supreme Court of Alaska.

Aug. 25, 1978.

---

J. P. Tangen, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellants.

James H. Berglund, Ronald W. Lorensen, Asst. Attys. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BOOCHEVER, Chief Justice.

Appellants David Allison and James A. McConaghy were partners in a joint venture for the construction of a 41-unit apartment complex in Juneau, Alaska. Appellant Randal L. Allison had been performing electrical wiring on the complex. (The three will hereinafter be referred to as "defendants.") On January 31, 1977, a Cease and Desist Order was issued by the Alaska Department of Labor, Wage and Hour Division. The order was directed to David Allison and James A. McConaghy and provided in part:

> . . . [I]t has been determined that you are engaged in the following activity: "installing electrical wiring in a 41 unit apartment complex."

This constitutes doing business as an electrical contractor within the meaning of AS 08.40.200. Further investigation indicates that you are operating without an electrical contractor's license. This is in violation of AS 08.40.090.

> . . . [Y]ou are hereby ordered to immediately cease and desist from further operation as an electrical contractor in the State of Alaska.

When the defendants allegedly did not comply, the state sought injunctive relief to enforce the order.[1] A stipulation was entered whereby the defendants would cease performing electrical wiring on the complex, except under the supervision of a licensed electrical contractor, pending resolution of the dispute by summary judgment. The parties agreed that "[t]he central issue in the . . . case is the applicability of the exclusion contained in AS 08.40.100 to the defendants. . . ." The superior court entered summary judgment for the state, and the defendants have appealed.

---

1. AS 08.40.178 provides:

   *Injunctive relief.* The commissioner of labor may seek an injunction in the superior court to enjoin a person from violating this chapter.

Although AS 08.40 was enacted in 1960,[2] this is our first opportunity to construe its provisions. At the time of the dispute in question, AS 08.40.090 provided:

No person may act as an electrical contractor in the state without a license issued by the board.[3]

The act had no declaration of purpose,[4] but it did contain the following exclusion, codified in AS 08.40.100:

A person making an electrical installation on residential property which is owned by the installer or a member of his immediate family and not intended for sale at the time of making the installation is not required to obtain a license.[5]

The superior court, in entering partial summary judgment for the state, held the exclusion of AS 08.40.100 inapplicable to the defendants.[6] The court found that, although the rental property was residential and owned by the defendants who performed the installation and did not intend to sell the property, the public safety purpose of the act precludes a literal reading of the exemption. The exclusion was held applicable only when "the electrician or family members reside in the individual residential unit."

The defendants argued below, as they do here, that the provisions of AS 18.60[7] and AS 18.62[8] establish sufficient safety guarantees without resort to an expansive reading of AS 08.40. We disagree and affirm Judge Stewart's decision based on his conclusion that AS 08.40 has "independent significance . . . as a health and safety enactment."

Although AS 08.40 is found in the title regulating "Business and Professions" and AS 18.60 and AS 18.62 are under the title providing for "Health and Safety," we con-

2. Chap. 158, SLA 1960.

3. This provision was amended in 1977 to substitute "administrator" for "contractor." Chap. 53, § 6, SLA 1977. The "board" is the Board of Electrical Examiners. AS 08.40.010. An "electrical contractor" was defined in AS 08.40.200(2) as follows:

"electrical contractor" means any person engaged in the business of, or purporting to be engaged in the business of, installing or repairing, or contracting to install or repair, electrical wiring, conduits, devices, fixtures, equipment or other electrical materials for transmitting, using or consuming electrical energy . . .

This provision was also amended in 1977 to substitute "administrator" for "contractor." Chap. 53, § 12, SLA 1977.

4. See Note 2, supra.

5. AS 08.40.100 was repealed by Chap. 53, § 14, SLA 1977. Its provisions survive today in AS 08.40.190(b)(3).

6. Limiting its grant of partial summary judgment to the issue of the exemption, the superior court assumed that the defendants were "electrical contractors" within the proscription of AS 08.40.090 since the parties "raised no question" as to this provision. We likewise find it unnecessary to pass upon AS 08.40.090 in reviewing the court's partial summary judgment.

7. AS 18.60.580–.660, entitled "Electrical Safety," provides for state inspection of electrical wiring of any "public structure" to insure compliance with the minimum electrical safety standards embodied in the National Electrical Code and the National Electrical Safety Code. A "public structure" is defined in AS 18.60.660 to include "resident housing with more than one rental unit."

8. AS 18.62.010–.080, entitled "Certificates of Fitness," required that persons performing work subject to the standards of AS 18.60.580 have a certificate of fitness to perform the work. AS 18.62.050 provides:

Issuance and contents of certificate.

(a) If, upon investigation and examination by the department, the applicant is found competent by reason of training and experience, the department shall issue a certificate of fitness. The certificate shall set out the competency of the applicant and provide for his positive identification, and shall be carried on the person engaged in work subject to the requirement of a certificate of fitness under this chapter.

(b) An applicant who engaged in a trade subject to the requirement of a certificate of fitness under this chapter who has been engaged in that trade in the state for one year or more before January 1, 1973, upon making a satisfactory showing of qualifications to the department, shall be issued a certificate without examination.

(c) Verification by an Alaska-based labor union of a member's qualification to meet the requirements of a certificate of fitness may be accepted in lieu of examination or other requirement for issuing a certification under this chapter.

clude that AS 08.40 provides safety precautions not fully encompassed under either AS 18.60 or AS 18.62. Foremost among our considerations is the fact that AS 08.40 requires that a prospective licensee be examined on his or her familiarity with the National Electrical Code and the National Electrical Safety Code,[9] while such specific knowledge is not required in order to obtain a Certificate of Fitness under AS 18.62.[10] Further, state inspection under AS 18.60 [11] does not provide the same protection against poor work that is contemplated by AS 08.40, since the presence or responsibility of a licensed electrical contractor having knowledge of the Codes is a constant influence, while state inspectors cannot continuously monitor to assure quality control. As Judge Stewart stated:

The licensing of electrical contractors provides the public with an added margin

of error. If the contractor does his job there will be less chance that state inspectors will fail to do theirs.

We are further influenced in our conclusion that AS 08.40 provides for public safety by the absence of a bonding requirement or other method of assuring financial responsibility.[12] Our reading of AS 08.40 convinces us that the legislature was primarily concerned with competency for protection of the public when it enacted the chapter. Moreover, Title 8 contains many chapters which contemplate protection of the public's health and safety and assure competency of those providing the services regulated.[13]

■ We further note that our construction of AS 08.40 is consistent with a subsequent declaration of legislative purpose [14] and with two opinions of the Attorney General construing the chapter.[15]

---

9. AS 08.40.120 provides:
   *Examination of applicant.* Each applicant shall be examined to determine his knowledge of electrical installations and wiring, familiarity with the regulations contained in the National Electrical Code and the National Electrical 'Safety Code, as approved by the American Standards Association, other installation and safety regulations approved by the American Standards Association, and his personal skill and ability.

10. *See* AS 18.62.050, Note 8, *supra.*

11. *See* Note 7, *supra.*

12. *Compare* AS 08.40 with the bonding requirements found in AS 08.18.071 (Construction Contractors); AS 08.24.150 (Collection Agencies); AS 08.66.060 (Motor Vehicle Dealers) and AS 08.92.030 (Concert Promoters).

13. *See, e. g.,* AS 08.12 (Barbers); AS 08.20 (Chiropractors); AS 08.28 (Cosmetologists and Hairdressers); AS 08.36 (Dentists); AS 08.42 (Morticians); AS 08.64 (Medicine); AS 08.68 (Nursing); AS 08.72 (Optometrists); AS 08.80 (Pharmacists); AS 08.86 (Psychologists) and AS 08.98 (Veterinarians).

14. AS 08.40.005, enacted after the complaint was filed in the instant case, provides:
    *Purpose of chapter.* The purpose of this chapter is to protect the safety of people and property in the state from the danger of improperly installed electrical wiring and equipment, by providing a procedure to assure
    (1) the public that persons responsible for making electrical installations in this state are qualified; and

(2) a sufficient number of persons are so qualified.
Chap. 53, § 2, SLA 1977. The United States Supreme Court has stated:
   Subsequent legislation which declares the intent of an earlier law is not, of course, conclusive in determining what the previous Congress meant. But the later law is entitled to weight when it comes to the problem of construction.
*F.H.A. v. Darlington,* 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132, 137 (1958). *See also, Glidden Co. v. Zdanok,* 370 U.S. 530, 541, 82 S.Ct. 1459, 1468, 8 L.Ed.2d 671, 682 (1962). At the same time that AS 08.40.005 was enacted, the legislature approved AS 08.18.026(a) regarding construction contractors which provides:
   The department [of Commerce] may not issue a certificate of registration as an electrical contractor to an applicant unless the applicant is, or has in his employ, a person currently licensed as an electrical administrator under AS 08.40.
Chap. 53, § 1, SLA 1977. *See* Note 3 regarding the substitution of "administrator" for "contractor" in AS 08.40. Thus, the current statutory scheme clearly indicates that the legislature contemplates an independent significance for AS 08.40.

15. *See* 1963 Opinion of Attorney General No. 14:
   The licensing provision is designed only to protect those desiring electrical work to be done and those who visit the improved premises from the results, particularly fire hazard, of shoddy workmanship.

Having concluded that AS 08.40 is a chapter concerned with safety, we believe that the exemptions therein should be narrowly construed to effect this purpose.[16] We hold that the exemption in question [17] is applicable only to residential property, or a unit thereof, actually occupied by the owner or a member of his immediate family and not intended for sale at the time of making the installation. The wiring of rental units for the occupancy of others is a "set stage for tragedy;" and, like the superior court, we find "little logic in exempting so large a segment of electrical installations from the licensing requirements as defendants' view would allow." We conclude that the legislature did not intend the term "residential property" to include leased property unless occupied by a member of the immediate family of the owner.

AFFIRMED.

*See also,* 1967 Opinion of Attorney General No. 3.
We agree with the following statement regarding the proper use of opinions of Attorneys General in statutory construction:

> While opinions of the attorney general are not controlling as to the meaning of the statute the fact that his opinions have not been challenged and that he is the officer charged by law with advising the officers charged with the enforcement of the law as to the meaning of it, entitle his opinions to great weight.

*Smith v. Municipal Court of Glendale Judicial District,* 167 Cal.App.2d 534, 334 P.2d 931, 935 (1959). *See also,* Sands Sutherland Statutory Construction, § 49.05 at 240 (4th ed. 1973).

16. Sands, Note 15, *supra,* § 71.04 at 325–7.

17. This exemption was embodied in AS 08.40.-100, which was repealed in 1977. This provision survived as AS 08.40.190(b)(3).