BEERS, INC., an Alaska Corporation, and Steve Beers and Maria Beers individually, Appellants,

v.

Jim ROBISON, Alaska Commissioner of Labor, and the State of Alaska, Appellees.

No. S–789.

Supreme Court of Alaska.

Nov. 1, 1985.

W.G. Ruddy, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellants.

Thomas E. Wagner, William T. Council, P.C., Juneau, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This is an appeal from a summary judgment entered by Superior Court Judge Rodger W. Pegues in favor of Jim Robison, Alaska Commissioner of Labor, and the State of Alaska (hereinafter State) and against Beers, Inc. and Steve and Maria Beers (hereinafter Beers). The superior court affirmed State's issuance of a cease and desist order[1] restraining Beers from installing an electrical distributing system at the Dog Bay Boat Harbor in Kodiak on the grounds that Beers lacked the proper electrical administrator's license. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Steve and Maria Beers are the sole owners of Beers, Inc., an Alaska corporation engaged in the business of installing electrical systems at small boat harbors. Steve Beers holds an electrical administrator's license in the outside linework category, but not in the inside linework category.

The electrical work performed by Beers was supervision of the installation of the electrical wiring at the Dog Bay Boat Harbor project at Kodiak. The harbor facilities are owned by the Alaska Department of Transportation and Public Facilities (DOTPF), but are leased to and operated by the City of Kodiak. The project included the wiring from Kodiak Electric Association's pad-mounted transformers on the shore to nearby transclosures containing wiring to the overhead lighting, and to the individual pedestals placed at each boat stall.

Preston Williams, an electrical inspector for the Alaska Department of Labor, Division of Labor Standards and Safety, inspected the Dog Bay Boat Harbor site and discovered a number of alleged electrical code violations. Williams subsequently met with Beers and DOTPF representatives to discuss the alleged code violations, at which time he learned that Beers did not have in its employ, or associated with it, any electrical administrator licensed in the inside wiring category (defined by 12 AAC 32.110).

Williams interpreted the relevant electrical licensing provisions, 12 AAC 32.031 and 12 AAC 32.110,[2] to require supervision by

---

1. This suit was filed in the superior court pursuant to AS 08.40.175(b) which provides that "a person affected by [a cease and desist order] may seek equitable relief preventing the commissioner of labor from enforcing the order."

2. 12 AAC 32.031 provides in pertinent part:

   SCOPE OF AN ELECTRICAL ADMINISTRATOR LICENSE IN THE OUTSIDE LINE WORK CATEGORY. (a) The holder of an electrical administrator license in the outside linework category may supervise all work defined in (b) of this section. A person holding a current valid license in outside linework will be granted a license in outside communications without examination.

   (b) Outside linework includes

   (1) all work necessary to the assembling, installation, erection, operation, maintenance or repair of all electrical apparatus, devices, wires, cables, supports, insulators, conductors, ducts, and raceways *when they are part of distribution systems outside of buildings;* (emphasis added).

   (2) all underground ducts and cable, when they are part of a system of a distributing company or utility.

   \*      \*      \*      \*      \*      \*

   12 AAC 32.110 provides:

   SCOPE OF AN ELECTRICAL ADMINISTRATOR LICENSE IN THE INSIDE WIRING CATEGORY. (a) The holder of an electrical administrator license in the inside wiring category may supervise all work defined in (b) of this section and the work defined under the residential wiring category in 12 AAC 32.190(b). A person holding a current valid license in inside wiring will be granted a li-

an inside electrical administrator on the Dog Bay project.[3] Williams reasoned that an inside electrical administrator's license was required to work on wiring which was owned and maintained by a public or private owner, and was not part of the distributing system of a utility company, and was on the secondary side of the distribution transformers. At Dog Bay the utility company, Kodiak Electric Association, owned and operated the wiring only up to the pad-mounted transformers on the shore, that is, the system on the primary side of the transformers. DOTPF owned and maintained the system on the secondary side of the transformers.

Williams thereafter served Beers with the cease and desist order directing it to refrain from proceeding with the project until it associated with the holder of an electrical administrator's license in the inside wiring category. Beers declined to so associate.

Beers filed suit in the superior court at Wrangell, seeking a preliminary injunction which would vacate the cease and desist order.[4] Superior Court Judge Henry C. Keene refused to issue a preliminary injunction and vacate the order. Beers voluntarily dismissed the Wrangell proceeding, before answer, and filed the instant action in the superior court at Juneau.

Beers challenged Williams' interpretation of the electrical licensing provisions, 12 AAC 32.031 and 12 AAC 32.110, and sought summary judgment on the issue of whether 12 AAC 32.031(b)(1) authorizes an electrical administrator licensed in the outside linework category to install distributing systems in boat harbors. Judge Pe-

gues held that State "demonstrated that both its regulatory scheme and its interpretation of that scheme have a reasonable basis, and accordingly, its decision must be affirmed." This appeal followed.

## II. DISCUSSION

Beers presents three arguments: (1) the superior court misconstrued the electrical licensing regulations; (2) State's issuance of a cease and desist order was arbitrary, capricious and unreasonable and a denial of due process of law; and (3) the superior court erred in issuing the form of judgment that it did. The superior court held that the second and third issues became moot when State prevailed concerning interpretation of the licensing regulations. We agree that the first issue is dispositive.

### A. *Standard of Review.*

■ Beers urges this court to substitute its own judgment for that of the agency, and to interpret the electrical licensing regulations according to trade usages of the term "distributing system." Beers contends that the superior court disregards the plain meaning of the regulations and industry usages of the term "distribution system," and that, given these interpretations, all the circuitry of the boat harbor's electrical system to and including the receptacle where the consumer/boat owner receives power is part of "distributing systems outside of buildings" and is therefore within the scope of the outside electrical administrator category set forth in 12 AAC 32.031. Alternatively Beers claims there is no reasonable basis for State's interpretation of the regulations.

cense in inside communications without examination.

(b) Inside wiring includes

(1) installation, construction, operation, maintenance and repair of all electrical work within buildings and within property lines of any given property, and beginning at the secondary side of the transformer, except linework consisting of poles and towers, including wires or cables and other apparatus supported by them, and except outdoor substations as defined under outside linework jurisdiction; and

(2) work starting immediately after the first point of attachment of aerial or underground conductors to buildings when aerial or underground wires or cables are used to provide power for buildings or structures within the property lines of any given property.

3. Pursuant to AS 08.40.090, a person licensed as an electrical administrator "may perform work only in a category for which the person is licensed."

4. The Wrangell proceedings are not part of this record.

This is not a case concerning "statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience," and are therefore "at least as capable of deciding [the] question as an administrative agency." [5] *Kelly v. Zamarello*, 486 P.2d 906, 916 (Alaska 1971).

Where an agency decision "involves questions in which the particularized experience and knowledge of the administrative personnel goes into the determination," and involves "administrative expertise as to either complex subject matter or fundamental policy formulations," the reasonable basis test is applied. [6] *Kelly*, 486 P.2d at 916–18. Under the reasonable basis standard of review, and agency decision is upheld where it has substantial support in the record or a reasonable basis in law. *Id.* at 918.

The instant case clearly involves complex subject matter and fundamental policy formulations. The Board of Electrical Examiners was statutorily-created to "adopt regulations establishing categories of electrical administrators [and to establish] qualifications for those categories," AS 08.40.045, with the purpose of "protect[ing] the safety of people and property in the state from the danger of improperly installed electrical wiring and equipment," AS 08.40.005. Clearly, the electrical examiners are charged with making fundamental policy decisions as to how best to achieve safety, and call upon their technical expertise in establishing licensing categories and in administering the Certificate of Fitness Program for linemen and electricians.

B. *Does State's Interpretation of the Scope of the Outside Linework Administrator's License Have a Reasonable Basis?*

■ This court's inquiry focuses upon whether State's interpretation of the regulations at issue, 12 AAC 32.031 and 12 AAC 32.110, has substantial support in the record or a reasonable basis in law. State maintains that the regulatory language of 12 AAC 32.031 has a specialized meaning which does not simply refer generically to the electrical distributing system carrying power from its source to the consumer. [7] State argues that Beers' distinction between inside wiring and outside linework is inconsistent with the structure of the regulations and that the safety purpose of the statute is better served by State's interpretation of the inside wiring and outside linework categories as mutually exclusive.

12 AAC 32.031(b)(1) authorized the holder of an outside linework administrator's license to supervise the installation of certain electrical work when it involves "part of distribution systems outside of build-

**5.** *See Union Oil Co. of California v. Department of Revenue*, 560 P.2d 21 (Alaska 1977) (regulation interpreting statute governing determination of oil production tax rate did not involve policy judgments which were type of specialized agency judgment); *State v. Aleut Corporation*, 541 P.2d 730 (Alaska 1975) (interpretation of statute relating to public land auction procedures).

**6.** *See Rose v. Commercial Fisheries Entry Commission*, 647 P.2d 154 (Alaska 1982) (CFEC's assessment of an applicant's relative hardship if excluded from the fishery); *Hammond v. North Slope Borough*, 645 P.2d 750 (Alaska 1982) (leasing offshore tracts for oil and gas exploration); *Kodiak Western Alaska Airlines, Inc. v. Bob Harris Flying Service*, 592 P.2d 1200 (Alaska 1979) (regulating air taxi service in rural Alaska); *Weaver Brothers, Inc. v. Alaska Transportation Commission*, 588 P.2d 819 (Alaska 1978) (operating rights of trucking company); *Alaska Public Utilities Commission v. Chugach Electric Association*, 580 P.2d 687 (Alaska 1978) overruled on other grounds, *City and Borough of Juneau v. Thibodeau*, 595 P.2d 626 (Alaska 1979) (Public Service Commission assignment of fixed service areas to corporation and city light and power within area served by both).

**7.** State pointed out at trial that
[w]hen we talk about the utility system delivering power to its consumer, we're talking about delivering power to whoever it delivers it to at the end of its line. The consumers are the people to whom the electric utility delivers its power initially, even though that power may eventually be carried on down to some ultimate consumer.

Thus, in this situation, Kodiak Electric Association, the utility company, delivered power to its consumer, DOTPF. DOTPF in turn delivered power to the ultimate consumer, the boatowner.

ings."[8] State contends that this phrase is intended to be synonymous with the phrase used in the next subparagraph: "when they are part of a system of a *distributing company or utility*." 12 AAC 32.031(b)(2) (emphasis added). State further contends that the outside linework category includes supervising wiring installation on the *primary* side of the transformers. 12 AAC 32.031(b)(1).

In State's view, an outside linework administrator may supervise work on the utility's *distributing* system on the primary side of the shore-based transformer. An inside wiring administrator's license is required to supervise all work on the DOTPF-owned system on the secondary side of the *shore-based transformer.*

It is consistent with the structure of the regulations to interpret the outside linework category as including the primary side of transformers and ending where the inside wiring category begins at the secondary side of the transformers. First, this interpretation comports with the literal terms of the inside wiring category, and with the subsequent amendment to outside linework regulation, 12 AAC 32.031, which both focus upon whether the wiring system is on the primary or secondary side of the distribution transformers. *See supra* notes 2, 8.

Second, providing mutually exclusive categories better achieves the safety purposes of the statute. According to State, if violations of the National Electric Code are found on the inside wiring, or violations of the National Electrical Safety Code are found on the outside linework associated with any particular installation, the owners and state electrical inspectors can readily ascertain which linemen or electricians, and the administrator supervising those persons, are responsible for making corrections. *See* AS 18.60.630 (enforcement of compliance) and 18.60.650 (penalty for violations). State rejects Beers' contention

that contract documents would provide the necessary information because in the event of a safety hazard the documents might not be available at the job site, especially after a project's completion, and even if available the documents might not address the issue. Further, the mutually exclusive categories reasonably meet the statute's objective of protecting the public from defective, and therefore dangerous electrical installations by ensuring that those who perform electrical work are qualified to do so, and that their license status is readily ascertainable. *See Allison v. State*, 583 P.2d 813 (Alaska 1978) (narrowly construing licensing exemption to effect safety purpose).

State has a reasonable basis for interpreting the term "distributing systems" in subparagraph .031(b)(1) in terms of the utility's distributing system, and in terms of the wiring on the primary side of the transformers. This interpretation comports with the literal terms of 12 AAC 32.-110(b)(1) and with subsequent amendments to 12 AAC 32.031. *See supra* notes 2, 8. Furthermore, State's interpretation of the outside linework and inside wiring administrator categories as mutually exclusive furthers the statute's purpose of protecting the public from improperly installed electrical wiring systems. Therefore we conclude that State's interpretation of 12 AAC 32.-031 and .110 meets the reasonable basis standard of review, and that State was justified in issuing a cease and desist order restraining Beers from supervising installation of the Dog Bay Boat Harbor electrical system.

The decision of the superior court is AFFIRMED.

---

**8.** 12 AAC 32.031(b)(1) was subsequently amended to clarify the regulation. It now states that outside linework includes electrical work "part of distribution systems outside of buildings *and are outside of property lines of any given property up to and including the primary side of transformers.*" 12 AAC 32.031(b)(1) (am 3/16/84, Reg. 89; am 8/16/84, Reg. 91).