Globen A. DIAZ, for Himself and on Behalf of All Others Similarly Situated, Appellant,

v.

SILVER BAY LOGGING, INC., Appellee.

No. S–10023.

Supreme Court of Alaska.

Sept. 27, 2002.

---

3. *Id.* at 449.

4. *Id.*

5. *Id.*

6. *Id.* Unlike the father in *Siekawitch,* Potter was never awarded primary physical custody.

7. *Id.*

8. *Id.* at 450.

9. *Id.* (footnote omitted).

Laurel K. Tatsuda, Law Office of Laurel K. Tatsuda, Anchorage, for Appellant.

Robert K. Reges, Jr., Ruddy, Bradley, Kolkhorst & Reges, Juneau, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and BRYNER, Justices.

## OPINION

MATTHEWS, Justice.

The main question in this case is whether a regulation prohibiting an employer from deducting the costs of food and lodging from an employee's pay applies to all such deductions or only those that reduce the employee's pay below the minimum wage. We conclude that the latter meaning applies because the language of the regulation will not reasonably support the former meaning.

The regulation in question is 8 AAC 15.160 as it existed until 1998. It was promulgated under section 23.10.085 of the Alaska Wage and Hour Act (AWHA) and became effective on September 28, 1985. We set out in the margin the text of the relevant subsections of the regulation, 8 AAC 15.160(a) and (d),[1] and the statutory section which authorized the regulation, AS 23.10.085.[2]

Globen Diaz worked as a logger for Silver Bay Logging, Inc., during the logging seasons of 1994 through 1997. While so employed he stayed at Silver Bay's remote camps. Pursuant to a written agreement, Silver Bay deducted from his earnings $10 a day for board and lodging. This deduction did not reduce his wage rate below the statutory minimum wage. No alternative public board and lodging facilities were accessible to Diaz at any of the camps.

Diaz brought this action against Silver Bay on his own behalf and as a class representative for others similarly situated claiming, among other things, that the board and lodging deductions were unlawful under 8 AAC 15.160. Silver Bay moved for summary judgment. After several rounds of briefing and oral argument, summary judgment was granted and a final judgment was entered.

■ Diaz's main contention was and is that 8 AAC 15.160(d) prohibits deductions for board and lodging except where an employee opts out of alternative board and lodging, an exception not applicable to his case as alternative board and lodging was never available. In the superior court Silver Bay took issue with this interpretation and argued that subsection .160(d) does not apply to deductions that do not reduce an employee's wage rate below the minimum wage. The superior court took a third position. The court ruled that subsection (d)(1) states a requirement that is additional to those of subsections (d)(2) and (d)(3) and that it only applies where alternative facilities are available. When alternative facilities are not available

1. 8 AAC 15.160 (1985) provided in relevant part:

(a) AS 23.10.085(c) does not limit the right of an employer and employee to enter into a written agreement to provide for deductions of monetary obligations of an employee. Requiring or inducing an employee to return or give up any part of the compensation to which the employee is entitled, whether by force, intimidation, or threat of dismissal from employment, or by any other manner, is prohibited. A written agreement for deductions payable to the employer or person acting in the employer's behalf or interest is not valid if it would have the effect of reducing an employee's wage rate below the statutory minimum, or if it would require an employee to reimburse the employer for any of the following:
(1) customer checks returned due to insufficient funds or any other reason;
(2) non-payment for goods or services as a result of theft or credit default;
(3) cash or cash register shortages unless the employee admits, willingly and in writing, to having personally taken the specific amount of cash that is alleged to be missing;
(4) lost, missing, or stolen property, unless the employee admits willingly and in writing, to having personally taken the specific property alleged to be lost, missing, or stolen; or
(5) damage or breakage costs unless clearly due to willful conduct of the employee and the employee has acknowledged responsibility in writing.
. . . .
(d) Nothing in (a) of this section prohibits deductions from earnings, based on a written agreement, to reimburse an employer for the reasonable cost of furnishing board and lodging, if
(1) alternative public board and lodging facilities are accessible to the worksite and the employee has declined to use such facilities;
(2) the board and lodging facilities of the employer are customarily furnished by the employer and used by the employees; and
(3) the cost to the employee for the use of the employer's board and lodging facilities, is reasonable and without profit to the employer.

2. AS 23.10.085 provides:

(a) The director may adopt, amend, or rescind administrative regulations not inconsistent with the purposes and provisions of AS 23.10.050—23.10.150 that are necessary for the administration of AS 23.10.050—23.10.150.
(b) The regulations may, without limiting the generality of (a) of this section, define terms used in AS 23.10.050—23.10.150, and restrict or prohibit industrial homework or other acts or practices that the director finds appropriate to carry out the purpose of AS 23.10.050—23.10.150, or to prevent the circumvention or evasion of AS 23.10.050—23.10.150.
(c) The regulations may permit deductions by an employer from the minimum wage applicable under AS 23.10.050—23.10.150 to employees for the reasonable cost, as determined by the director on an occupation basis, of furnishing board or lodging if board or lodging is customarily furnished by the employer and used by the employee.

only subsection (d)(2) and (d)(3) must be satisfied. The court's ruling implies that subsection (d) applies to cases where the deduction does not reduce compensation to a wage rate below the statutory minimum.

■ For the reasons that follow we conclude that subsection (d) does not bar deductions that are permitted under subsection (a). Instead, subsection (d) permits, under the limits it expresses, deductions that would otherwise be barred by subsection (a). We thus agree with the position taken by Silver Bay before the superior court that subsection (d) does not apply to deductions that do not reduce an employee's wage rate to below the minimum wage.[3]

The prefatory language of subsection (d)— "nothing in (a) of this section prohibits"—can only function to permit conduct that subsection (a) would otherwise prohibit, it cannot prohibit conduct that subsection (a) permits. Subsection (a) prohibits written deductions that "have the effect of reducing an employee's wage rate below the statutory minimum . . . ." Thus subsection (d) can permit deductions that would take a wage rate below the minimum because those deductions are prohibited by subsection (a). But it cannot serve to prohibit deductions that do not reduce wages below the minimum, because such deductions are permitted by subsection (a).

Meaning, of course, can be conveyed by a negative implication. But the negative implication that might otherwise be drawn by a failure to satisfy one of the three conditions of subsection (d) is limited by the "nothing in (a) of this section prohibits" prefatory language of subsection (d). The failure to meet

one of the (d) conditions implies only that conduct prohibited by subsection (a) is indeed prohibited.[4]

If the prefatory language to subsection (d) were "Notwithstanding (a), deductions are prohibited unless, (1) . . . (2) . . . (3)" the interpretation Diaz offers would be correct. But those are not the words used, and the words that are used will not, in our view, reasonably bear Diaz's offered meaning.[5]

The Alaska Department of Law has interpreted subsection .160(d) as we do. The attorney general, in a memorandum to the Department of Labor dated April 23, 1986, concerning the meaning of subsection .160(d), stated:

> Thus, if the conditions in paragraphs (1)— (3) [of .160(d) ] are met (i.e., for our purposes, the employee is not at a remote site) nothing in (a) prohibits a deduction for room and board. Although one inference that might be drawn from this is that if (1)—(3) are *not* met, (a) *would* prohibit such a deduction, a reading of (a) does not support this conclusion. . . . When (d) is read together with subsection (a), it seems to provide that if the conditions in paragraphs (d)(1)—(3) are met, a written agreement for deductions is valid *even though* it would reduce the employee's wage rate below the minimum. There is nothing else in subsection (a) that would appear to limit the employer's ability to deduct the cost of room and board from an employee's wages. Nowhere in subsections (a) or (d) is the situation explicitly addressed regarding deductions when the conditions listed in (d)(1)—(3) are *not* pres-

---

3. The court can affirm a summary judgment on grounds not relied on by the superior court. "Moreover, we should consider any matter appearing in the record, even if not passed upon by the lower court, in defense of the judgment." *Beluga Mining Co. v. State, Dep't of Natural Res.*, 973 P.2d 570, 574 (Alaska 1999).

4. Diaz seems to suggest that interpreting subsection (d) to apply only when board and lodging deductions would reduce effective pay to a rate lower than required rates would place AWHA in conflict with the federal Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201–219 (1998). But this is clearly not the case. The regulations concerning board and lodging deductions under

the FLSA explicitly do not apply to deductions where the employee still receives more than the minimum wage after deductions are taken. 29 C.F.R. § 531.36(a) (2002). Since we interpret subsection (d) of 8 AAC 15.160 to be effective under the same conditions as the FLSA regulations and since the Alaska minimum wage is higher than the federal minimum wage, AS 23.10.065(a), our interpretation of (d) will not result in a conflict between AWHA and FLSA.

5. Similarly, we reject the superior court's interpretation because it, implicitly at least, also accepts the proposition that subsection (d) prohibits what subsection (a) permits.

ent (for example, when alternative facilities are not accessible), and therefore, the general prohibition in (a) against agreements for deductions that reduce the employee's wage rate below the statutory minimum is the only limitation on deductions in that situation. Stated simply, if there are alternative facilities available, and the employee declines to use them, then deductions for the cost of facilities furnished by the employer are allowed, even though they have the effect of reducing the employee's wage below a minimum wage; if alternative facilities are *not* available, then the exception in subsection (d) to the limitations of (a) does not apply, and deductions for facilities furnished by the employer may not reduce the employee's wages below the statutory minimum. In short, nothing in 8 AAC 15.160 prohibits deductions for room and board in a remote-site situation if the deductions do not take the wages below the statutory minimum.... (Footnote omitted.)

Diaz argues that his interpretation of 8 AAC 15.160(a) and (d) reflects the longstanding and consistent position of the Alaska Department of Labor. Diaz argues that his, and the Department of Labor's, position is therefore entitled to deference in accordance with the "well-settled rule that courts are to give deference to an agency's construction of its own legislative-type regulations...."

It appears that the Department of Labor interprets subsection .160(d) in accordance with Diaz's position. Counsel for Diaz wrote the department in 1998, asking about the meaning of subsection .160(d). J.R. Carr, Chief of Labor Standards, responded that subsection (d) applies regardless of whether a "deduction reduces the wages below the statutory minimum wage...." And there are internal memoranda and correspondence dating back to 1986, which suggest that this was the position of the department. In addition, Diaz has gathered affidavits and deposition testimony of officials of the Department of Labor indicating that subsection (d) was,

from the outset, meant to apply to deductions that did not reduce wages below the minimum wage. On the other hand the testimonial evidence as to the department's original interpretation of subsection .160(d) is in conflict. Donald Wilson, who as Deputy Director of Labor Standards in the Department of Labor drafted subsection .160(d), testified that it did not bar a deduction that "does not reduce the employee's wage below the statutory minimum."

■ Given the 1986 opinion of the attorney general and the conflicting testimonial evidence of labor department officials, the deference due the Department of Labor's current interpretation of subsection (d) is debatable,[6] but, in context, the point is unimportant. Our rule is that an agency's interpretation of its own regulation "is normally given effect unless plainly erroneous or inconsistent with the regulation."[7] Here the department's interpretation does not satisfy the conditions of this rule because, as we have explained above, it is inconsistent with the language of the regulation and, as such, it is unreasonable.

■ Diaz also argues that the board and lodging deduction violated the second sentence of 8 AAC 15.160(a) because Diaz was required to "give up ... the compensation to which [he] is entitled." The superior court ruled that a written agreement between an employee and employer made before the employment relationship commenced would not fall within the prohibition of this sentence:

> The terms of 8 AAC 15.160(a) apply only where the employer/employee relationship has commenced. Prior to accepting and commencing employment with [Silver Bay], Diaz was not "entitled" to any remuneration because he was not yet an employee of [Silver Bay] and had not performed any services for them.

This rationale is correct. The concept of entitlement must refer to an employee's contractual or statutory and regulatory rights.

---

6. *See* 2B NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 49:05 (6th ed. 2000) ("[W]eight given to an agency interpretation depends on many factors, including ... its consistency with earlier and later agency pronouncements....").

7. *Trustees for Alaska v. State, Dep't of Natural Res.*, 795 P.2d 805, 812 (Alaska 1990).

In this case contracts between Silver Bay and Diaz entered into at the outset of each season provided for a $10 lodging and board deduction. No statutory or regulatory provision prohibited this deduction. Thus Diaz was not required to give up any part of compensation to which he was entitled.

■ Diaz also argues that the superior court should not have granted summary judgment concerning claims he asserted for unpaid overtime compensation and under-reporting of his wages to the Internal Revenue Service and the Social Security Administration. His argument concerning these claims is that Silver Bay should have added the $10 (divided by 8 for an 8–hour day) to his stipulated hourly pay rate for purposes of calculating his overtime rate of pay and reported it as income for purposes of tax withholding. The superior court determined that these claims lacked merit because the furnishing of board and lodging was not a benefit furnished by Silver Bay as part of Diaz's compensation package: "Because the court finds that the deduction for room and board does not constitute a wage, Diaz's claims for underreporting of income, failure to withhold income and failure to pay taxes on the unreported income are all precluded as a matter of law." This conclusion is also correct. Diaz was not paid $10 or its equivalent in food and lodging, he was charged $10.[8] To the extent that the charge reflected the value of what he received, this was not an employee benefit. He does not contend that the value of the board and lodging exceeded $10 per day.[9]

■ Diaz also argues that the court's award of $3500 in attorney's fees was error.

Silver Bay's actual attorney's fees were $142,542. The norm under Civil Rule 82 in a summary judgment case would be to award twenty percent of actual fees—here $28,-508—to Silver Bay as the prevailing party.[10] Diaz correctly notes that absent a finding of bad faith a losing claimant under the AWHA may not be subjected to an award of attorney's fees,[11] and that he litigated in good faith.

The trial court adhered to this rule. But two of Diaz's claims were not covered by the AWHA. These were claims for breach of contract and for violation of AS 23.05.140(b). Civil Rule 82 applies to these claims. The trial court ordered Silver Bay to apportion its fees between the AWHA and these claims. Silver Bay made an effort to do so but the trial court did not accept Silver Bay's calculations. The court allocated most of the work performed by Silver Bay's counsel to the AWHA claims and attributed only a little less than 12½% of the total effort to the other claims. Decisions such as this are discretionary.[12] The court's allocation here was easily within the bounds of its discretion.

For these reasons the judgment of the superior court is AFFIRMED.

FABE, Chief Justice, with whom BRYNER, Justice, joins, dissenting.

CARPENETI, Justice, not participating.

FABE, Chief Justice, with whom BRYNER, Justice, joins, dissenting.

# I. INTRODUCTION

Due to the remoteness of Silver Bay's logging operations and the fact that it frequent-

---

**8.** Diaz does not dispute Silver Bay's evidence showing that his overtime rate of pay was calculated before the room-and-board deductions were made.

**9.** If there was an excess, it would still not be considered as income, at least for federal tax purposes because, as Diaz concedes, the board and lodging was furnished for the convenience of the employer. *See* 26 U.S.C. § 119(a) (2002).

**10.** Alaska R. Civ. P. 82(b)(2).

**11.** *See* AS 23.10.110(f). Prior to 1995, the AWHA did not authorize an award of attorney's fees to a prevailing defendant. Diaz's claims for

overtime wages earned before August 22, 1995 (the effective date for amended AS 23.10.110) are exempt from having attorney's fees collected against them under former AS 23.10.110(c) or Civil Rule 82. *See Grimes v. Kinney Shoe Corp.*, 938 P.2d 997, 1001 (Alaska 1997). His claims for wages earned after that date are subject to amended AS 23.10.110(f), which allows a defendant to collect attorney's fees in an action for unpaid overtime compensation only in the event of a frivolous or bad faith claim.

**12.** *See Dansereau v. Ulmer*, 955 P.2d 916, 918–19 (Alaska 1998) (within court's discretion to independently calculate reasonable hours in determining appropriate attorney fee award).

ly moved those operations during the logging season, it was necessary for Silver Bay to house its employees on "highly mobile, waterborne" barges in order to conduct its business. Thus, Silver Bay's board and lodging facilities were indispensable to Silver Bay's logging business and were furnished primarily for Silver Bay's convenience. No alternative public facilities were available to Diaz that were accessible to Silver Bay's worksite, and it was not Diaz's choice to live at Silver Bay's facilities. For these reasons, the cost of the board and lodging provided by Silver Bay cannot be deducted from Diaz's earnings.

The plurality's interpretation of 8 AAC 15.160(d) to allow such a deduction flatly ignores the federal regulatory definitions and interpretations that have been adopted by the Alaska Department of Labor pursuant to its grant of authority from the legislature. And the plurality's decision affords no deference to the Department's longstanding interpretation of its own regulation to prohibit board and lodging deductions where no alternative public facilities are accessible to the worksite. Finally, the plurality's unique interpretation of the regulatory scheme finds no support in case law from any jurisdiction, federal or state. This is because its interpretation would place the Alaska Wage and Hours Act in direct conflict with the federal Fair Labor Standards Act (FLSA) by allowing an employee to deduct board and lodging costs from wages under circumstances not recognized as reasonable under FLSA regulations. We have held that "the Alaska Act should be construed to avoid conflicts with the FLSA." [1] And "it is only where state law is more restrictive or more favorable to the employee that it governs in lieu of the federal Act." [2] I therefore disagree with the plurality opinion.[3]

## II. THE ALASKA DEPARTMENT OF LABOR HAS ADOPTED FEDERAL REGULATORY DEFINITIONS THAT PREVENT DEDUCTION OF SILVER BAY'S LODGING AND BOARD FROM DIAZ'S PAY.

The Alaska Legislature has granted the Alaska Department of Labor broad discretionary power to formulate policy consistent with the Alaska Wage and Hours Act.[4] Alaska Statute 23.10.145 requires us to apply federal regulatory definitions where terms have not been defined by the Alaska Department of Labor.[5] The legislature has left it to the Department's discretion whether federal definitions can be applied consistently with the Alaska Wage and Hours Act.[6] The De-

---

1. *Webster v. Bechtel, Inc.,* 621 P.2d 890, 901 (Alaska 1980).

2. *Alaska Int'l Indus. v. Musarra,* 602 P.2d 1240, 1246 (Alaska 1979).

3. Because we are equally divided on this issue, the decision favoring affirmance has the effect of a plurality opinion: it will affirm the superior court's ruling in the present case but will not be binding in future cases. Our case law establishes that "[a] decision by an evenly divided court results in an affirmance." *Ward v. Lutheran Hosps. & Homes Soc'y of America, Inc.,* 963 P.2d 1031, 1037 n. 11 (Alaska 1998) (quoting *Thoma v. Hickel,* 947 P.2d 816, 824 (Alaska 1997)). Moreover, "an affirmance by an equally divided court is not precedent." *City of Kenai v. Burnett,* 860 P.2d 1233, 1239 n. 11, 1246 (Alaska 1993) (Compton, J., concurring).

4. *See* AS 23.10.085, which states:

(a) The director may adopt, amend, or rescind administrative regulations not inconsistent with the purposes and provisions of AS 23.10.050—23.10.150 that are necessary for the administration of AS 23.10.050—23.10.150.

(b) The regulations may, without limiting the generality of (a) of this section, define terms used in AS 23.10.050—23.10.150, and restrict or prohibit industrial homework or other acts or practices that the director finds appropriate to carry out the purpose of AS 23.10.050—23.10.150, or to prevent the circumvention or evasion of AS 23.10.050—23.10.150.

(c) The regulations may permit deductions by an employer from the minimum wage applicable under AS 23.10.050—23.10.150 to employees for the reasonable cost, as determined by the director on an occupation basis, of furnishing board or lodging if board or lodging is customarily furnished by the employer and used by the employee.

5. AS 23.10.145 provides: "If not defined in this title or in regulations adopted under this title, terms used in AS 23.10.050—23.10.150 shall be defined as they are defined in the federal Fair Labor Standards Act of 1938, as amended, or the regulations adopted under it."

6. *See Dresser Indus., Inc. v. Alaska Dep't of Labor,* 633 P.2d 998, 1003 (Alaska 1981). Alaska Stat-

partment has used this broad grant of discretionary authority to adopt regulations requiring an employer's lodging and board charges to be "reasonable" [7] and has incorporated federal regulations and interpretations to determine the "reasonable cost" of the employer's board and lodging deductions.[8] Under these federal regulations, "reasonable cost" does not include the cost of furnishing board or lodging found to be primarily for the benefit or convenience of the employer.[9] Thus, under the Alaska Department of Labor's regulations, an employer may deduct from an employee's wages the cost of employer-provided board and lodging facilities only if the facilities are furnished primarily for the benefit of the employee.

The relevant state regulation, 8 AAC 15.160(d)(3), provides that the cost of employer-furnished board and lodging must be reasonable:

> Nothing in (a) of this section prohibits deductions from earnings, based on a written agreement, to reimburse an employer for the *reasonable cost* of furnishing board and lodging, if
>
> . . . .
>
> (3) the cost to the employer for the use of the employer's board and lodging facilities, is *reasonable* and without profit to the employer

(Emphasis added.) The regulations expressly provide that the director of the Wage and Hour Division will make a determination of "reasonable cost" based on standards set forth under the FLSA, adopting by reference the FLSA's regulations pertaining to the de-

termination of "reasonable cost." [10] The language of 29 C.F.R. § 531.3(d)(1) excludes from the definition of "reasonable cost" the cost of furnishing meals and lodging that are primarily for the benefit or convenience of the employer:

> The cost of furnishing "facilities" found by the Administrator to be primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages.

In addition, "reasonable costs" may not exceed the employer's actual cost,[11] may not include a profit to the employer,[12] and may not exceed the "fair rental value" or "fair price" of the employer-provided lodging.[13]

Thus, to determine "reasonable costs" in accordance with these provisions of the Code of Federal Regulations, a threshold determination must be made as to whether the housing and meals at issue are being furnished primarily for the benefit or convenience of the employer or the employee. Only when the lodging and board are found to be provided primarily for the convenience of the employee does one move to the second step of evaluating whether the amount to be deducted from the employee's wages is the reasonable value of the furnished board and lodging. In this case, it is clear from the record that the lodging and board that Silver Bay furnished to Diaz were primarily for Silver Bay's benefit, and thus could not be deducted from Diaz's wages as "reasonable costs." [14]

ute 23.10.095 provides that "[t]he commissioner may adopt regulations and interpretations that are made by the administrator of the Wage and Hour Division of the federal Department of Labor and that are not inconsistent with AS 23.10.050—23.10.150."

7. 8 Alaska Administrative Code (AAC) 15.160(d)(3) (2000).

8. 8 AAC 15.160(f) provides that "[t]he director will make the determination regarding the cost of board and lodging under (d)(3) of this section. The determination will be made in accordance with 29 C.F.R. §§ 531.3—531.5 and 531.29—531.35."

9. *See* 29 C.F.R. § 531.3(d)(1) (2000).

10. 8 AAC 15.160(f).

11. 29 C.F.R. § 531.3(a) (2002).

12. 29 C.F.R. § 531.3(b) (2002).

13. 29 C.F.R. § 531.3(c) (2002).

14. The Department's regulations further require that employer-provided board and lodging must be "customarily furnished" by the employer before the employer can require reimbursement. 8 AAC 15.160(d)(2). Under the federal regulatory definition adopted by the Department, board and lodging is "customarily furnished" only when the employee's acceptance of the employer's facilities is "voluntary and uncoerced." 29 C.F.R. § 531.30 (2002).

## III. THE DEPARTMENT OF LABOR'S LONGSTANDING AND CONSISTENT INTERPRETATION PROHIBITS DEDUCTIONS OF LODGING AND BOARD COSTS FROM DIAZ'S WAGES.

In addition to adopting by reference the federal "convenience to the employer" doctrine, the Department also codified this doctrine. Indeed, the language of 8 AAC 15.160(d)(1) expressly prohibits deductions for board and lodging in the two most common circumstances where board and lodging have been found to be furnished primarily for the employer's business convenience or benefit: (a) where no alternative public board and lodging facilities are accessible to the worksite; and (b) where the employer requires the employee to accept the employer's facilities to meet some need of the employer even though alternative facilities are available. The Department's longstanding interpretation of 8 AAC 15.160 to prohibit lodging and board deductions where no alternative public facilities are accessible to the employer's worksite is both consistent and reasonable.

Alaska Administrative Code regulation 8 AAC 15.160(d)(1) provides that board and lodging deductions from wages are prohibited in two circumstances: (a) at a remote location where there are no alternative public board and lodging facilities accessible to the worksite; and (b) where the employer requires the employee to use the employer's board and lodging even though alternative public housing is accessible to the worksite. This is how the Department of Labor has interpreted its regulation—disallowing such deductions even where they do not reduce the employee's pay below the minimum wage.

In 1998 Randy Carr, the Department's Chief of Labor Standards and Safety, issued an opinion letter to Diaz based on the specific facts of Diaz's employment with Silver Bay and concluded that employers may only deduct room and board from wages where alternative facilities are accessible to the worksite and employees voluntarily choose to reside in employer-provided facilities, regardless of whether they reduce the employee's pay below the minimum wage.[15] Carr confirmed that "8 AAC 15.160(d)(1) requires that alternative facilities be accessible to the worksite and that use of the employer's facilities be voluntary in order for such a deduction [for lodging and board] to be allowed.... When work is performed at a remote site, the use of employer-provided room and board is a condition of employment. It is not voluntary. No deduction may be made." Moreover, in response to a query whether his conclusion "depend[s] in any way on whether the deductions from wages reduce an employee's wage rate below Alaska's statutory minimum rate," his answer was "No." Carr proceeded to point out that whereas 8 AAC 15.160(c) specifically states that deductions for transportation are allowed so long as they do not "reduce the employee's wages below the statutory minimum," no such requirement is contained in 8 AAC 15.160(d), leading to the conclusion that the prohibition of deductions from wages for involuntary lodging is entirely independent of the statutory minimum wage.

Carr later confirmed that this opinion letter accurately reflects both the Department's current interpretation of the regulation and its interpretation at the time of the regulation's adoption in 1985. An earlier opinion letter issued by Carr in 1985, at the time the regulation was being drafted, confirms the longstanding consistency of this interpretation.[16] When asked if charges for room and board could be withheld from an employee's wages, Carr, then statewide Supervisor of the Labor Standards and Safety Division, responded:

> Yes, if alternate facilities are available and the employee has declined the use of such alternate facilities.... Deductions for the cost of room & board are *not permitted* on floating processors or shore based operations where alternate facilities are not available.

We uphold an agency's interpretation of its own regulations unless it is "plainly errone-

15. Wage and Hour Opinion Letter (WHOL) # 133.

16. WHOL # 30.

ous."[17]  Although under this deferential standard we "exercise our independent judgment in determining the validity of an administrative regulation and in interpreting the underlying regulation," we "will not substitute our judgment for that of the agency with regard to the efficacy or wisdom of the regulation."[18]  Even under the independent judgment standard, this court "gives some weight to what the agency has done, especially where the agency interpretation is longstanding."[19]

The plurality opinion today affords no deference to the Alaska Department of Labor's interpretation of 8 AAC 15.160.  Carr testified that the Department's purpose in writing the regulation was to prevent employers from requiring employees at remote work sites to "shoulder the cost of the employers doing business."  Thus, adoption of 8 AAC 15.160(d)(1) reflected a clear policy choice, and policies regarding the determination of allowable wage deductions are squarely within the Department's purview and expertise.

Moreover, the Department's interpretation is longstanding and, contrary to the plurality's suggestion, consistent.  The Department has always maintained that 8 AAC 15.160 prevents employers from deducting the cost of board and lodging from employee wages at remote work sites where no alternative housing is available.  Regulations implementing the Alaska Wage and Hours Act were not adopted until 1974, but at that time they did not address wage deductions for board and lodging.[20]  A 1969 letter from then Attorney General G. Kent Edwards provided that deductions for room and board were not permitted unless the director decided otherwise:

> The Alaska Legislature enacted AS 23.10.085 as a permissive statute, leaving the board and lodging deductions at the discretion of the director.  By doing so, *it is apparent that the legislature intended that no board and lodging deductions be made unless and until the director so provides by regulation.*

(Emphasis added.)

In 1982 a team from the Department began to redraft what is now 8 AAC 15.160.  Notice of the proposed regulations was published in newspapers throughout Alaska in 1983, and hearings were held the same year.  The record reveals that companies likely to be affected by the proposed regulation understood it to mean that employers operating in remote locations where no alternative lodging facilities were available would have to bear the cost of employee room and board.[21]  Donald Wilson, then Deputy Director of the Labor Standards and Safety Division, noted that the Department elected not to change the regulation in spite of opposition by employers as it was designed to prevent employers from shifting their costs to employees:

> Cominco/Alaska, "The Alliance" and Colorado Mining, Inc. also took exception to 8 AAC 15.160.  We do not intend to make any changes to this section since the law is quite clear with regard to employers causing their employees to shoulder the cost of the employer doing business.

The Department's regulations were adopted in 1985[22] and have remained unaltered.[23]

In accordance with its purpose of preventing employers from shifting their costs to employees, the Department has from the regulation's inception interpreted it to prevent employers from deducting the cost of room and board from employee wages where

---

**17.**  *Bd. of Trade, Inc. v. State, Dep't of Labor,* 968 P.2d 86, 89 (Alaska 1998) (quoting *State, Dep't of Highways v. Green,* 586 P.2d 595, 602 n. 21 (Alaska 1978)).

**18.**  *Bd. of Trade,* 968 P.2d at 89 (citations omitted).

**19.**  *Usibelli Coal Mine, Inc. v. State, Dep't of Natural Resources,* 921 P.2d 1134, 1142–43 (Alaska 1996) (quoting *Fairbanks N. Star Borough Sch. Dist. v. NEA–Alaska, Inc.,* 817 P.2d 923, 925 (Alaska 1991)).

**20.**  The original regulations were numbered as 8 AAC 15.050.

**21.**  No changes to the proposed regulations were made after comments and hearings.

**22.**  8 AAC 15.160, am. 9/28/85, Register 95.

**23.**  8 AAC 15.160 was last amended in 1999, but the provisions at issue in this case were not altered.  8 AAC 15.160, am. 4/29/99, Register 150.

there are no alternative facilities available. Jim Robison, Commissioner of the Department of Labor from 1982 to 1986, wrote a letter to Warren Gore, then Executive President of the AFL–CIO, explaining that employers were not permitted to charge their employees to use employer-owned facilities where no public lodging was available:

> Governor Sheffield has provided me with a copy of your letter ... concerning employer campsite requirements for remote work. Having reviewed your comments, I would like to offer an explanation of the Department of Labor's interpretation of these regulations.
>
> . . . .
>
> Employers operating in remote areas where there is no public housing available which is immediately accessible or in close proximity to the work site are prohibited from charging employees for the use of any employee facilities....

An affidavit submitted by Robison in this case confirms that the letter to Gore accurately reflected the Department's interpretation of 8 AAC 15.160(d) at the time it was adopted. Robison also specified that it was Department policy that employers who operate in remote areas with no public housing were prohibited from charging employees for the use of employer-owned room and board. Finally, Robison confirmed that the opinion letter written by Carr for Diaz's case accurately reflects the Department's interpretation.

These interpretations by current and former Department officials are also consistent with the Department's administrative decisions on this issue. For example, in *Rhule v. Gildersleeve*, the Department determined that an employer's deductions from an employee's wages to pay for room and board were unlawful because there were no alternative board and lodging facilities accessible to the remote worksite.[24] Rhule was an employee at a remote logging camp who was required to authorize, before beginning employment, a deduction from his wages of $12 per day to cover the cost of room and board.

After quoting in full 8 AAC 15.160(d), a Wage and Hour investigator from the Department's Juneau regional office informed Gildersleeve Logging:

> *The key factor is that there are no alternative facilities accessible to the worksite. This alone, renders all other arguments moot.* The fact that this arrangement is also a condition of employment reinforces our determination that deductions for room & board under these conditions do not meet the requirements of [8 AAC 15.160(d)].

(Emphasis added.) This Wage and Hour investigator emphasized to Gildersleeve that "the fact that there are no alternative public board and lodging facilities accessible to the worksite renders *any deduction from wages* unlawful."

And Silver Bay itself was the subject of a similar wage complaint in 1993. In *Chapman v. Silver Bay Logging*, the Department informed Silver Bay that it was not permissible to deduct the cost of room and board when alternate facilities were not available:[25]

> Please note that there are three criteria which must be met in order for deductions for room and board to be considered permissible. In order for board and lodging deductions to be valid, alternative public board and lodging facilities must be accessible to the worksite and the employee must have declined to use such facilities.... Unless you can prove that alternative public board and lodging facilities were accessible to the work site and that Mr. Chapman and other workers declined to use such facilities, the deductions for board and lodging are not permissible.

Thus, the record reveals that the Department of Labor has maintained a single, consistent interpretation of 8 AAC 15.160 since the regulation's promulgation in 1985. The Department's administrative actions reveal one policy: Employers are not permitted to make wage deductions for room and board unless alternative facilities are available and the employee has declined to use them—even

---

24. Dep't of Labor, Claim J1296–076T (1996–1997).

25. Dep't of Labor, Claim J0893–078G (1993–1994).

where those deductions would not reduce the employee's pay below minimum wage.

The plurality has accepted Silver Bay's argument that there was not a single, consistent interpretation of the regulation and that the plurality therefore owes little deference to the Department's interpretation. Silver Bay relies on the testimony during the course of this litigation of Donald Wilson, who served as Deputy Director of Labor Standards from 1983 to May 1987. Wilson is now retired. Wilson was part of the original team that drafted the regulation. He was deposed for this case and provided his own interpretation of the regulation. Wilson testified that he did not intend to prohibit deductions for room and board where there was no alternative to employer-owned lodging. He characterizes the employee choice of lodging this way: "He can turn down the job and go somewhere else. That is the choice.... It is the interpretation of the law as I live it."

However, the plurality overlooks the fact that while Wilson was at the Department, his interpretation was identical to that of Diaz and the other Department witnesses in this case. In a September 19, 1986 memorandum, Wilson explained to then Commissioner Robison that 8 AAC 15.160(d) required that employers operating at inaccessible sites provide their employees with transportation or bear the cost of room and board:

> Because [of the company's provision of free, daily, round-trip transportation from Nome to the worksite] and the ready availability of public board and lodging facilities in Nome it is my opinion that [the company] can legally apply the terms of 8 AAC 15.160(d) and charge the reasonable cost of board and lodging at the camp site to those employees who elect to use it rather than return to Nome each day.
>
> Of course if [the company] should stop providing transportation and the road condition were to remain hazardous, or if it were rendered otherwise impassable by acts of God, *[the company] would then have to bear the cost of providing board*

*and lodging to its employees* and subcontractors['] employees.

(Emphasis added.) Wilson also sent a memorandum to Bob Bacolas, Director of Labor Standards in July 1984, stating that

> [r]egardless of whether an employer operates or sub-leases his camp site in a remote area, the employer [is] going to have to bear the burden of providing board and lodging. *As long as the employee is essentially institutionalized and cannot commute to his true domicile and the work site except on an infrequent basis, and then only by commercial carrier, the cost of providing room and board must be borne by the employer.* The regulations were heard at public hearing[s] in the three major population centers of the state.... There may be some employers who think they can circumvent the law and make a profit. Every time a law is enacted, someone tries to take advantage of it for the reason of financial gain. It is up to the enforcement agency to ensure that such events do not occur.

(Emphasis added.) These two documents authored by Wilson at the time of the regulation's adoption contradict his deposition testimony, given twelve years after his retirement from the Department.

The plurality further relies on a single opinion contained in a letter from the attorney general in 1986. However, such opinions are not binding authority on this court, nor do they have any precedential value.[26] Furthermore, this particular opinion letter has been challenged by the Department of Labor and therefore is not entitled to great weight.[27]

In conclusion, when the agency has received such a broad delegation of power to make policy consistent with the Alaska Wage and Hours Act, has drafted a regulation that reflects a policy choice, and has then clearly and consistently implemented that regulation over a period of fifteen years, this court must

---

**26.** *Allison v. State,* 583 P.2d 813, 816 n. 15 (Alaska 1978).

**27.** *Id.* (providing that the fact that the opinion of the attorney general had not been challenged entitled his opinion to great weight).

defer to the interpretation unless it is clearly unreasonable.

## IV. THE DEPARTMENT'S INTERPRETATION OF THE REGULATION IS REASONABLE.

Finally, the plurality concludes that even if the Department's interpretation is longstanding and consistent, it is unreasonable and thus accorded no deference. The plurality maintains that when an employee is required to live in employer-provided housing because this arrangement suits the convenience of the employer, the employer may deduct the cost of that lodging from the employee's wages as long as the deduction does not reduce the wages below the statutory minimum. Yet, the plurality's strained interpretation of 8 AAC 15.160 finds no support in any federal or state decision, and the Department's interpretation is more reasonable.

First, as discussed above, the Department has expressly incorporated the federal FLSA definitions of "reasonable cost" and "customarily furnished," which exclude the cost of furnishing meals and lodging that are primarily for the benefit or convenience of the employer or that do not permit the employee to choose voluntarily to live in the employer-furnished facilities. The Department's interpretation of its regulation to preclude deductions for employer-provided lodging when the lodging is provided for the employer's convenience is thus consistent with the FLSA definitions adopted by the Department under its legislative grant of authority and is therefore reasonable.

Second, the plurality concludes that subsection (d)'s limitations on reimbursement for board and lodging facilities of the employer apply only if the reimbursement would reduce wages below the statutory minimum. The plurality maintains that subsection (d) "cannot serve to prohibit deductions that do not reduce wages below the minimum, because such deductions are permitted by subsection (a)."[28] But subsection (d) contains three conditions that must be met before a deduction from earnings can be made for employer-provided housing: (1) alternative public board and lodging facilities must be accessible to the worksite and the employee must have declined to use these available facilities; (2) the employer-provided board and lodging facilities must be customarily furnished by the employer and used by the employees; and (3) the cost to the employee for use of the employer's board and lodging facilities must be reasonable and without profit to the employer. If, as the plurality reasons, these limitations of subsection (d)(1), (2), and (3) do not apply unless wages are reduced below statutory minimums, then employers could require employees to live in their facilities and charge unreasonable or profit-making rates, deducting these charges from wages, as long as the deductions did not reduce the employee's wages below the statutory minimum. It is the plurality's interpretation of this regulation that is unreasonable, particularly in light of its purpose to prevent employers from shifting to its employees the cost of doing business.

Finally, the Department's analysis of the interplay between the various subsections of 8 AAC 15.160 is superior to the plurality's interpretation.[29] Randy Carr explained that interpretation in his opinion letter to Diaz. As Carr points out, subsection (a) of 8 AAC 15.160 lists a number of specific deduction practices that are prohibited, despite the presence of a written employment agreement. These banned practices include any deduction that would reduce an employee's wages below the statutory minimum. However, subsections (b), (c), and (d) proceed to describe various types of permissible wage deduction practices and specify that the prohibitions of subsection (a) will not apply to these various wage practices as long as the specific conditions contained within each subsection are met. For example, subsection (c), which allows deductions for certain transportation costs, contains the condition that no transportation deduction may reduce the employee's wages below the minimum wage.

However, the subject of minimum wages is not reflected in subsection (b), which allows deductions from earnings where the employ-

---

28. Plurality Opinion at ——.

29. WHOL # 133.

ee directs the employer to pay a sum for the benefit of a creditor, donee, or third party. Thus, even if the directed third-party payment reduces the employee's wages below the statutory minimum, it is permissible. And similarly, subsection (d), which addresses deductions of board and lodging costs, does not contain as one of its conditions that the employee's wages must not be reduced below the statutory minimum. As the Department concluded in the opinion letter, "[t]he subject of minimum wages is not mirrored in subsection (d), which addresses room and board deductions. If the deduction practices satisfy the three conditions listed in the regulations, a deduction would be legal even if it reduced the employee's wages below the statutory minimum." By implication, however, if any of the three conditions are not satisfied, the deduction cannot be made, regardless of whether this would leave the employee's wages above the statutory minimum.

## V. CONCLUSION

When the Alaska Department of Labor promulgated 8 AAC 15.160, it made a policy choice to prevent employers from forcing their employees to "shoulder the cost of the employer doing business." Because the Department has adopted the FLSA regulatory definitions, has consistently interpreted its regulation to prohibit the deductions made from Diaz's wages, and has adopted an interpretation that is not unreasonable, I believe that this court should defer to the Department's view that alternative facilities must be available before an employer may deduct the cost of room and board.